**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Emilano GOMEZ–GALLARDO,
Defendant–Appellant.**

**No. 89–30153.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 6, 1990.

Decided Oct. 2, 1990.

Robert H. Gombiner, Nance, Iaria & Gombiner, Seattle, Wash., for defendant-appellant.

William H. Redkey, Jr., Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Before TANG, NELSON and CANBY, Circuit Judges.

NELSON, Circuit Judge:

### OVERVIEW

Defendant/appellant Emilano Gomez–Gallardo (Gallardo) was indicted and convicted for conspiracy with Jose Delacruz–Gutierrez (Gutierrez) to distribute cocaine. Gallardo appeals three alleged errors in his jury trial. He argues that Gutierrez was called as a witness in order to introduce otherwise inadmissible evidence, that the government introduced evidence of Gutierrez's guilty plea for illegitimate and highly prejudicial purposes and that the government elicited prejudicial and irrelevant evidence of Gallardo's drug use. We reverse the conviction and remand for new trial.

## FACTUAL AND PROCEDURAL HISTORY

On the basis of an investigation by Agent James Baker with the assistance of an informant, "Lucky" Vrell, the government alleged that Gallardo, the appellant, and Gutierrez conspired to distribute cocaine between September 23 and 27, 1988. Gutierrez pled guilty to this charge.

The government's case against Gallardo was based on the testimony of Vrell, Baker and Gutierrez. Vrell testified that he had participated in drug deals with Gallardo and Gutierrez and that they were supposed to complete a deal on the night of September 27, 1988. Vrell also testified that he had used cocaine with Gallardo. On direct examination Vrell stated that he had not talked to Gallardo at all about the September 27 deal, although he recanted that statement on redirect.

Agent Baker testified at the trial that he had overheard a conversation between Vrell and a man who identified himself as Emilio arranging a drug deal.[1] Baker also stated that he had surveyed Vrell's house on September 27 and that he had seen Gallardo arrive and spend about three hours. When Gallardo left the house Baker arrested him. Gallardo had no drugs in his possession and no cocaine connected to the alleged conspiracy was ever found.

Prior to Gallardo's trial, the government told the court that it did not expect Gutierrez to agree to testify. On the final day of trial, the government asked to call Gutierrez out of the presence of the jury. Under oath Gutierrez testified that he knew Gallardo. He admitted participating in one cocaine deal with Vrell but claimed that he had never participated in any cocaine transaction with Gallardo. Gutierrez stated that on September 27 his car was overheating

and he had called Gallardo to meet him at Vrell's house to give him a ride.[2] On the basis of this testimony the government decided to call Gutierrez.

On the stand in the presence of the jury, Gutierrez first testified that he had pled guilty to a conspiracy with the defendant to distribute cocaine. Gutierrez then repeated his testimony from earlier in the day, including his assertions of Gallardo's innocence and that Gallardo was at Vrell's house only because of the overheating car.

The government had three witnesses impeach Gutierrez's testimony and character. Agent Perry Skipton testified as to statements made by Gutierrez involving a different proposed sale of cocaine. Agent Bruce Stubbs testified about Gutierrez's involvement in a scheme to trade machine guns for cocaine. The government never claimed that Gallardo was involved in either of the schemes described by Agent Skipton and Agent Stubbs.[3] Finally Agent Samuel Soto testified that he had driven the car Gutierrez claimed was overheating and that there was no indication of any mechanical difficulties.

The defense presented no evidence, arguing only that the government had not proven its case. The defense did not object to the government calling Gutierrez as a witness, to the admission of his guilty plea into evidence or to the introduction into evidence of appellant's use of cocaine.

In closing arguments, the government stated that no question existed as to Gutierrez's guilt. It reviewed all the evidence in the case, closely examining Gutierrez's testimony and urging the jury to reject it as false. The jury convicted Gallardo. He was sentenced to 97 months imprisonment

---

1. The conversation took place in English. The evidence indicates that Gallardo spoke only Spanish.

2. Gutierrez claimed he began having car trouble in Ellensberg, Washington and that he had called Gallardo in Yakima, Washington to request that Gallardo drive to Seattle and wait at Vrell's house. Apparently the distances between these cities makes this story obviously implausible.

3. On the night of September 27, Gutierrez had been arrested in possession of two kilograms of cocaine and charged with conspiracy. This conspiracy involved a trade of cocaine for machine guns. Gutierrez pled guilty to this conspiracy as well as the separate conspiracy allegedly involving the defendant.

to be followed by three years of supervised release. He timely appeals.

## DISCUSSION

### I. Standard of Review

Because none of the issues on appeal was raised before the district court, we employ a plain error standard of review. *United States v. Hernandez*, 876 F.2d 774, 777 (9th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 179, 107 L.Ed.2d 135 (1989); Fed. R.Evid. 103(d). Under this standard, we notice errors only if they affect substantial rights. *United States v. Bustillo*, 789 F.2d 1364, 1367 (9th Cir.1986). "Thus, in the absence of timely objection, only those errors that seriously affect the fairness, integrity or public reputation of judicial proceedings will be corrected by this court." *United States v. Smith*, 790 F.2d 789, 793 (9th Cir.1986) (internal quotations omitted).

### II. Government's Impeachment of Gutierrez

■ Gallardo claims that the government called Gutierrez as a witness for the sole purpose of impeaching him with otherwise inadmissible evidence. The defendant also argues that this was a highly prejudicial error requiring reversal even under the plain error standard. The government claims it called Gutierrez to "facilitate[ ] its proof of the elements of the crime charged."

Federal Rule of Evidence 607 permits the government to impeach its own witness. However, "the government must not knowingly elicit testimony from a witness in order to impeach him with otherwise inadmissible testimony." *United States v. Whitson*, 587 F.2d 948, 952–53 (9th Cir. 1978); *Kuhn v. United States*, 24 F.2d 910, 913 (9th Cir.), *cert. denied*, 278 U.S. 605, 49 S.Ct. 11, 73 L.Ed. 533 (1928). "[T]he maximum legitimate effect of the impeaching testimony can never be more than the cancellation of the adverse answer by which the party is surprised." *United States v. Crouch*, 731 F.2d 621, 623 (9th Cir.1984),

*cert. denied*, 469 U.S. 1105, 105 S.Ct. 778, 83 L.Ed.2d 773 (1985) (internal quotations omitted). That is, impeachment is not permitted where it is "employed as a guise for submitting to the jury substantive evidence that is otherwise unavailable." *United States v. Peterman*, 841 F.2d 1474, 1479 (10th Cir.1988), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 783, 102 L.Ed.2d 774 (1989) (internal quotations omitted); *United States v. Webster*, 734 F.2d 1191, 1192 (7th Cir.1984) (internal quotations omitted).

In evaluating the reason a witness is called, we determine whether the government examined the witness for the *primary* purpose of placing before the jury substantive evidence which is not otherwise admissible. *United States v. Hogan*, 763 F.2d 697, 702 (5th Cir.1985); *Peterman*, 841 F.2d at 1479.

After carefully reviewing the trial transcript, we are convinced that the government did call Gutierrez for the primary purpose of impeaching him.[4] In determining the government's purpose, we examine its use of the evidence during the trial rather than any post-trial explanation.

The government argues that Gutierrez's testimony was intended to corroborate Vrell's testimony. Although part of Gutierrez's testimony did so corroborate, a review of the transcript indicates that the government did not use the testimony for corroborative purposes at trial.

In closing argument the government did not rely on Gutierrez's testimony in support of its case, but instead urged the jury to consider him a liar. At one point, the prosecutor specifically argued, "if you don't believe the testimony of Jose Delacruz–Gutierrez ... then you're entitled to conclude that the defendant was here to do a deal." Later in closing argument, the government reiterated:

> Has the government proved beyond a reasonable doubt that the defendant conspired to distribute cocaine? Jose Delacruz–Gutierrez says no, that there was no conspiracy. Do you accept his testimony? Does it hang together? Does it

---

4. Unfortunately, because the defense did not object at trial, Judge Rothstein never had the opportunity to decide whether the government called Gutierrez for an impermissible purpose.

correspond to common sense or does it sound like he's just trying to get a buddy out of trouble?"

Moreover, the government cannot claim that it intended to use Gutierrez's testimony to prove its case but was surprised by his testimony; it knew in advance that Gutierrez would testify falsely.[5]

In sum, Gutierrez's testimony that the prosecution now claims was material in its proof of the case was never so argued to the jury. Instead, the government thoroughly discredited his testimony.[6] On this basis, and in light of the testimony itself, we are compelled to conclude that the government called Gutierrez for the primary purpose of impeaching Gutierrez's credibility to prove the substance of the charges against Gallardo. This is an illegitimate purpose.

■ We also find that the government's actions reached the level of plain error. The government's case was weak: Gallardo had not been caught with any cocaine; there was evidence he spoke no English and could not have discussed the transaction with Special Agent Baker or understood the conversations with Gutierrez and Vrell; and Vrell had contradicted himself on the stand. The government's ability to bring in Gutierrez's testimony, to question him about unrelated crimes and to show that his defense of Gallardo was false was crucial to the conviction.

Moreover, the government's actions directly undermined the judicial process. The government is obligated to prove its case beyond a reasonable doubt; the defendant has no concomitant obligation to prove a defense. In the instant case, Gallardo chose to provide no defense theory or witnesses but to argue only that the government had failed to prove its case. The government, however, created a defense theory and alibi for him in order to prove his guilt by refuting it. The adversarial system breaks down when the defendant is prevented from defining and presenting his own case and the prosecution proves guilt by creating and then destroying its own creation. This type of error "seriously affect[s] the fairness, integrity [and] public reputation of judicial proceedings," *Smith*, 790 F.2d at 193, and thus must be reversed even under a plain error standard of review.[7]

### III. Admission of Prior Drug Use

■ The defendant claims that the government violated Federal Rule of Evidence 403 by eliciting evidence of the defendant smoking cocaine with Gutierrez.

Rule 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury". F.R.Evid. 403. The evidence at issue was elicited during Vrell's direct examination. Vrell was discussing how drug deals were done and how he would smoke the cocaine during a deal. The government attorney asked Vrell if anybody else smoked it. Vrell answered, "Oh yes." The government attorney asked, "Who?". Vrell answered, "Emilio and Jose." The defendant's drug use was not discussed further.

In their briefs the government and appellant debate whether the evidence simply "smear[ed] his character" or was probative of motive. We need not resolve whether or

---

5. Before testifying at the trial, Gutierrez was brought to the stand and testified under oath outside the presence of the jury. In that testimony he repeatedly stated that he had not agreed with the defendant to distribute cocaine. He also told the same story about his overheating car that he told during the trial. It is undisputed that the government was not surprised by Gutierrez's testimony. Thus, contrary to the principle stated in *Crouch*, the impeaching testimony went well beyond a "cancellation of the adverse answer by which the party is surprised." *Crouch*, 731 F.2d at 623. *Cf. Webster*, 734 F.2d at 1192, 1193 (finding that because prosecutor had no idea what witness would say in advance and judge refused to allow her to examine the witness outside the presence of the jury, the court could not hold that impeachment was mere subterfuge).

6. The only portion of Gutierrez's testimony that the government asked the jury to believe was that he was guilty.

7. Because we find that the government improperly called Gutierrez as a witness, we need not determine whether it was error to introduce the guilty plea.

not the evidence was more prejudicial than probative, however, because we find that even if admission of the evidence did violate Rule 403, it was not a "highly prejudicial error affecting substantial rights." *Bustillo*, 789 F.2d at 1367 (internal quotations omitted). The mention of Gallardo's drug use was minimal; the government did not refer to it again after Vrell's statement and it was not an integral part of the government's case. Defendant has offered no reason to believe that this alleged error resulted in a "miscarriage of justice." *Id.* Thus, we find that the admission of drug use did not reach the level of plain error.

## CONCLUSION

For the foregoing reasons, we conclude that calling Gutierrez as a witness constituted plain error. Accordingly, we reverse the conviction and remand for a new trial. We also find that the introduction of evidence of defendant's drug use was not reversible error.

REVERSED AND REMANDED.