974 F.2d 1343
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
THE PEOPLE OF THE TERRITORY OF GUAM, Plaintiff-Appellee,
v.
GENARO SITSON VITUG, Defendant-Appellant.
 No. 91-10332.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 20, 1992.*
Decided Sept. 8, 1992.
 
 1
 Appeal from the United States District Court for the District of Guam, Appellate Division, CR-90-00081-A; Jones, Munson and Rafeedie, Judges, Presiding.
 
 
 2
 AFFIRMED.
 
 
 3
 Before KOZINSKI and DAVID R. THOMPSON, Circuit Judges, and VON DER HEYDT,** Senior District Judge.
 
 
 4
 MEMORANDUM***
 
 
 5
 * Genaro Sitson Vitug and his family lived with Vitug's nephew, Victor Randovan, and Randovan's family. In 1988, Vitug allegedly sexually fondled Randovan's two stepdaughters, who were then aged 8 and 10. His defense at trial was that Randovan's wife, angered by some disagreements between the two families, pressured the girls into trumping up the charges to get back at the Vitugs. He was convicted, and the Appellate Division of Guam upheld the convictions. He now appeals to us, and we affirm.
 
 II
 
 6
 Emily Crueldad, a police officer, interviewed the two girls shortly after the abuse was reported (which was some months after the alleged incidents). Crueldad's report said that "both children were being pressured by [their] mother during the time of the interview." Appellant's E.R. Tab "G" at 177. At trial, the prosecutor asked Crueldad whether the statement in her report "in any way mean[t] that you did not believe [the children]." Crueldad answered "No." Id. at 178. Vitug argues that this was inadmissible expert opinion on a witness's credibility, citing United States v. Binder, 769 F.2d 595, 602 (9th Cir.1985), which held that psychiatric evidence on the credibility of a child abuse victim's courtroom testimony was inadmissible.
 
 
 7
 However, Vitug's objection at trial was on a completely different basis: "[Crueldad] stated her opinion already on what the kids ... why the kids ... why she drew her opinion on the kids feeling pressured...." I RT at 178 (ellipses in original). To preserve an evidentiary issue for appeal, the objecting party must specifically mention the issue in the objection. See, e.g., United States v. Gomez-Norena, 908 F.2d 497, 500 (9th Cir.) (collecting cases and authorities interpreting Fed.R.Evid. 103(a), the federal analog of 6 Guam Code Ann. § 103(a)), cert. denied, 111 S.Ct. 363 (1990).
 
 
 8
 Because Vitug failed to properly object below, we review the admission of Crueldad's statement for plain error. See 6 Guam Code Ann. § 103(d). "Reversal of a criminal conviction on the basis of plain error is an exceptional remedy, which we invoke only when it appears necessary to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process." United States v. Bustillo, 789 F.2d 1364, 1367 (9th Cir.1986). Even giving counsel the benefit of the doubt, and taking into account that objections made in the middle of trial are often phrased inartfully, there's nothing here that could have alerted the trial judge to the possibility that Crueldad's evidence was inadmissible expert opinion or impermissible vouching. See Advisory Committee's Note to Fed.R.Evid. 103(a) (purpose of objections is to "alert [the judge] to the proper course of action").
 
 
 9
 Even if admission of Crueldad's statement was error, we don't think that a miscarriage of justice occurred. While it's hard to guess how much a particular piece of evidence swayed the jury, we think it unlikely that the jury would have ascribed undue significance to Crueldad's judgment. The girls were only the third or fourth child sexual abuse victims she had interviewed. I RT at 176. Moreover, much of her time on the stand was spent qualifying her original report that the children were being pressured. See id. at 171-84. We doubt she made a particularly impressive expert witness, or that the jury "impermissibly ... accept[ed her] determination that these particular witnesses were truthful," Binder, 769 F.2d at 602, instead of deciding this matter for themselves.
 
 
 10
 Neither do we think that Crueldad's statement jeopardized the integrity of the judicial process. Crueldad's statement isn't the sort of clearly inadmissible evidence whose introduction raises a strong inference of prosecutorial misconduct. Cf. United States v. Gomez-Gallardo, 915 F.2d 553, 555-56 (9th Cir.1990) (admission of evidence was plain error because prosecutor was consciously using it to unjustifiably prejudice the jury). Nor does it undermine the core protections to which criminal defendants are entitled. See id. at 556. There was no plain error here, if there was error at all.
 
 III
 
 11
 Vitug's wife gave an alibi for Vitug: She said that, on one of the occasions Vitug allegedly fondled the children at the Randovan home, he was actually out of the house with her. During his subsequent testimony, Vitug didn't corroborate this alibi.
 
 
 12
 The prosecutor, in her closing argument, argued that Vitug's silence about the alibi helped show the wife's testimony wasn't credible. Vitug contends this was prosecutorial misconduct. The prosecutor, Vitug says, intentionally mischaracterized the evidence: She knew that the real reason for his silence was that, in response to her objection to the alibi, Vitug's attorney promised not to have him testify about it.
 
 
 13
 The alibi caught the prosecutor by surprise. Vitug's lawyer was bound by a stipulated discovery order to give ten days' notice of any alibi defense, but no such notice had been given. In a confusing side-bar, the prosecutor first moved to strike the alibi but then changed her mind, deciding instead to impeach the wife on cross-examination. The defense lawyer first said he wouldn't ask the defendant about the alibi but then changed his mind, saying that "it depends on how [the wife's] testimony goes." II RT at 26. The prosecutor interpreted the defense lawyer's statement as saying that "he is not going to go into [the alibi] anymore," id., but it's unclear whether she thought he wouldn't go into the alibi at all, or only wouldn't go into it further while examining the wife.
 
 
 14
 Intentionally mischaracterizing evidence can indeed be prosecutorial misconduct, and in some circumstances requires overturning a conviction. Berger v. United States, 295 U.S. 78 (1935). The prosecutor asked the jury to infer that Vitug didn't testify about the alibi because he knew the alibi was false. If, as Vitug contends, the prosecutor knew this wasn't the real reason--and knew the only reason Vitug didn't comment on the alibi was that his lawyer had agreed not to have him comment on it--then her argument to the jury might well have been misconduct.
 
 
 15
 But Vitug's lawyer made no such agreement. He reserved the right to ask Vitug about the alibi "depend[ing] on how [the wife's] testimony" went. Ultimately he didn't ask Vitug about it, but this could easily have been because he suspected the wife was lying.
 
 
 16
 A lawyer's equivocal and ambiguous statements can't deprive the opposing lawyer of the right to comment on the evidence. Vitug's wife gave an alibi for Vitug. The prosecution was entitled to impeach her in the jury's eyes by pointing out that the one person who was best situated to corroborate her had failed to do so.
 
 
 17
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 The Honorable James A. von der Heydt, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3