The appellant, Mark Edgar Ritchie, appeals from his convictions on two counts of sexual abuse in the first degree, violations of § 13A-6-66, Ala. Code 1975. He had been charged with sexually abusing two children who lived in his neighborhood. He was sentenced to 22 years' imprisonment.
The appellant argues that the trial court erred when, he says, it allowed the State to improperly "impeach" his wife, Jeannie Ritchie, through the testimony of another witness as to why Mrs. Ritchie would not allow her children to be interviewed without an attorney present. More particularly, he contends that the State was allowed to introduce inadmissible evidence through the testimony of its witness, Kelly Saunders, an investigator with the Department of Human Resources ("DHR"), which contradicted his wife's testimony at trial regarding the reason she did not want her children interviewed. He argues that the impeaching testimony resulted in the introduction of evidence of an alleged prior bad act, in violation of Rule 404(b), Ala.R.Evid.; thus, he argues that his motion for mistrial made on this ground should have been granted.
He further argues that the statement should not have been admitted as a prior inconsistent statement because, he says, the State did not comply with Rule 613, Ala.R.Evid, which requires that the witness making the prior inconsistent statement be given an opportunity to admit or to deny having made the statement.
The record reveals that the State called the appellant's wife as its witness. Mrs. Ritchie testified that shortly after the alleged incident of sexual abuse occurred, she talked with a DHR investigator, Kelly Saunders, and told her that she did not want her children interviewed without her or an attorney present because she did not want the police to "mislead" them. She further testified that she had observed similar cases on television where the police had misled children or had misconstrued their statements.
The State then called Kelly Saunders, who testified as follows:
 "[Prosecutor]: And in this particular case, who did you talk with?
 "[Witness]: I talked with Patsy Oliver, the guidance counselor at Highlands Elementary School, and I spoke with two of Mr. and Mrs. Ritchie's children.
"[Prosecutor]: Did you attempt to talk to anybody else? *Page 994 
 "[Witness]: I attempted to talk to a third child, but he would not talk with me and Sgt. Jenkins.
 "[Prosecutor]: In talking with the Ritchie children, how did you go about doing that?
 "[Witness]: We had initially set up an interview for those children to be interviewed at the Advocacy Center, but Mrs. Ritchie cancelled the appointment the day of the interview. So, Sgt. Jenkins and I went to the school to talk with the boys.
 "[Prosecutor]: So, at one point they had been set up through Mrs. Ritchie.
"[Witness]: Yes, sir.
"[Prosecutor]: And she cancelled that.
"[Witness]: Yes, sir.
"[Prosecutor]: So, you went to what school?
 "[Witness]: I believe it was Selma Street to talk to the two younger boys and waited around to talk to [the older son].
"[Prosecutor] And would they tell you anything?
"[Defense counsel]: Objection to hearsay, Judge.
"[Trial court]: Overruled.
"[Prosecutor]: Would they tell you anything?
 "[Witness]: [One of the Ritchie children] told us that [one of the victims] had asked him had his daddy ever touched him, and told him that his daddy had touched him on his privates. And [the Ritchie child], also, stated that he had been told by his mother not to tell the police that his daddy had touched [the victims].
 "[Prosecutor]: After you attempted to talk with the boys at the school, did you have any more contacts with Mrs. Ritchie?
 "[Witness]: Yes, she did — After the boys told her that we had talked to them, she was very upset that we had gone and talked to them without her knowledge.
 "[Prosecutor]: Prior to that time, had she told you that she would not let the boys talk to you or anything?
"[Defense counsel]: Objection to hearsay.
"[Witness]: No, sir.
 "[Defense counsel]: Judge, can I have a standing objection to hearsay?
"[Trial court]: Yes. Overruled.
 "[Prosecutor]: And, I believe, you said, in fact, that they had an appointment set up and she concurred with that appointment.
"[Witness]: Yes, sir.
"[Prosecutor]: But, then, cancelled it.
"[Witness]: Yes, sir.
 "[Prosecutor]: Did Mrs. Ritchie give you a reason as to why she didn't want the children to talk with you or the police?
"[Witness]: She indicated —
"[Prosecutor]: Right now, yes or no on that.
"[Witness]: Yes.
 "[Prosecutor]: Was the reason that she gave you that she had seen on TV where police would lead — or mislead — children?
"[Witness]: No, it was not.
 "[Prosecutor]: What was the reason that she told you that she did not want the children to talk to you?
 "[Witness]: She told me that in the previous interviews in the past, allegations had been made against her husband of sexually abusing. In those interviews, she felt like the children had been led, and she did not want her children interviewed without her present.
 "[Defense counsel]: And Judge, I object. Can we approach?
 "(Whereupon, there was a conference at the bench as follows:)
"[Trial court]: Okay, go ahead. *Page 995 
 "[Defense counsel]: Judge, I'm going to ask for a mistrial. This type of putting stuff in front of a jury just on allegations, now has introduced something that the jury isn't going to put out of their minds, and it's prejudicial to my client, and it's based on pure allegations.
 "[Trial court]: Okay. Does the State have any response?
 "[Prosecutor]: Yes, sir. [Defense counsel], in questioning Mrs. Ritchie, asked about that. And that's impeaching what he asked and what he elicited from her. And I have a right to impeach her based on what he asked, and the answers she gave.
 "[Defense counsel]: But the Judge, or the Court, or the State could in its questions, it doesn't have to go into the details of something like this where the Court has a discretion to limit the admissibility of evidence because of undue prejudices. And at the very least, we'd ask for a limiting instruction.
 "[Trial court]: Well, [the prosecutor]. I don't think he intends to go into details.
"[Prosecutor]: Not at this point.
 "[Trial court]: I think already what has been said will be the extent of it. Your objection is overruled.
"[Prosecutor]: Thank you, your Honor.
 "(Whereupon, back in the hearing of the jury, the following occurred:)
 "[Prosecutor]: I believe, that's all, at this time, your Honor."
Historically, Alabama law precluded a party from impeaching one's own witness, see C. Gamble, McElroy's Alabama Evidence, § 165.01(6)(a) (5th ed. 1996); under current law, however, a witness's credibility may be attacked by any party, including the party calling the witness. Rule 607, Ala.R.Evid. In Smith v.State, 745 So.2d 922 (Ala.Cr.App. 1999), the defense sought to prove, through extrinsic evidence, a prior inconsistent statement by a witness the defense had called to testify. In holding that the trial court properly ruled that the appellant could not do so, this Court stated:
 "Although Rule 607, Ala.R.Evid., permits a party to impeach his own witness, '"the right to impeach one's own witness is not absolute and may be held inapplicable due to abuse."' Burgin v. State, 747 So.2d 916 (Ala.Cr.App. 1999), quoting C. Gamble McElroy's Alabama Evidence. § 165.01(6)(b) (5th ed. 1996).
 "In Burgin, this court was persuaded by the federal courts' interpretation of Rule 607 of the Federal Rules of Evidence, which is identical to the Alabama Rule:
 "'"[Rule] 607 allows the government to impeach its own witness. See Fed.R.Evid. 607. However, '"the government must not knowingly elicit testimony from a witness in order to impeach him with otherwise inadmissible testimony."' United States v. Gomez-Gallardo, 915 F.2d 553, 555 (9th Cir. 1990) (quoting United States v. Whitson, 587 F.2d 948, 952-53 (9th Cir. 1978)). Impeachment is improper when employed as a guise to present substantive evidence to the jury that would be otherwise inadmissible. Id. A determination must be made as to whether the government examined the witness for the primary purpose of placing before the jury substantive evidence which is otherwise inadmissible. Id."'
 "Burgin, 747 So.2d at 918, quoting United States v. Gilbert, 57 F.3d 709, 711 (9th Cir.), cert. denied, 515 U.S. 1110, 115 S.Ct. 2264, 132 L.Ed. 269 (1995). As this court stated in Burgin, '"[i]t would be an abuse of the rule . . . for the prosecution to call a witness that it [knows will] not give it useful evidence, just so it [can] introduce hearsay evidence against the defendant in the hope that the jury would miss the subtle distinction between impeachment and substantive evidence."' Id."
Smith, 745 So.2d at 935. Citing Federal caselaw concerning the interpretation of *Page 996 
Rule 607 of the Federal Rules of Evidence, the Court in Burgin v.State, 747 So.2d 916 (Ala.Cr.App. 1999), stated:
 "`It would be an abuse of the rule . . . for the prosecution to call a witness that it [knows will] not give it useful evidence, just so it [can] introduce hearsay evidence against the defendant in the hope that the jury would miss the subtle distinction between impeachment and substantive evidence. . . .' United States v. Webster, 734 F.2d 1191, 1192 (7th Cir. 1984). However, a prosecutor may call a witness it knows may be hostile, and it may impeach that witness's credibility. Surprise is not a necessary prerequisite to impeaching one's own witness under Rule 607. United States v. Palacios, 556 F.2d 1359 (5th Cir. 1977). Even if the prosecution had reason to believe that a witness would be reluctant to testify, it should not be bound by that knowledge when deciding to call a witness, because `an attorney is entitled to assume that a witness will testify truthfully' once the witness is in a court of law and is under oath. United States v. Patterson, 23 F.3d 1239, 1245 (7th Cir.), cert. denied, 513 U.S. 1007, 115 S.Ct. 527, 130 L.Ed.2d 431 (1994). A prosecutor's decision to call such a witness is subject to a good-faith standard, and it is `always open for the defendant to argue that the probative value of the evidence offered to impeach the witness is clearly outweighed by the prejudicial impact it might have on the jury, [pursuant to Rule 403, Ala.R.Evid.], because the jury would have difficulty confining use of the evidence to impeachment.' United States v. Webster, 734 F.2d at 1193)."
747 So.2d at 918-19.
In the present case, the prosecutor's intent in calling the appellant's wife to gain testimony concerning why she had advised her children not to talk to the police was clearly an attempt to introduce, through improper impeachment, otherwise inadmissible evidence of prior bad acts by the appellant. It should be further noted that pursuant to Rule 613(b), Ala.R.Evid., "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness has been confronted with the circumstances of the statement with sufficient particularity to enable the witness to identify the statement and is afforded an opportunity to admit or to deny having made it." The appellant's wife was never asked about an inconsistent statement she had made concerning her motivation in instructing her children to refrain from speaking to the police.
While the allegations against the appellant are reprehensible and the State presented strong evidence of the appellant's guilt, this error cannot be considered harmless, based on the fact that it supplied the jury with new information that was extremely prejudicial.
 "When the evidence of the defendant's guilt is strong, the defendant must show that the trial court's error was prejudicial. Chillous v. State, 405 So.2d 58, 61 (Ala.Cr.App. 1981); Boyd v. State, 50 Ala. App. 394, 397, 279 So.2d 565 (Ala.Cr.App. 1973); C. Gamble McElroy's Alabama Evidence, § 430.01 (3d ed. 1977). The Court of Criminal Appeals stated in its opinion that '[w]e are convinced that the admission of the prior inconsistent statement did not supply the jury any new information, but merely attacked Sullivan's credibility at trial, and was in no way damaging to this appellant.' In essence, that was an application of Rule 45, A.R.A.P."
Ex parte Harris, 428 So.2d 124, 125 (Ala. 1983).
Based on the foregoing, the trial court's denial of the appellant's motion for a mistrial constituted reversible error. Therefore, the judgment is due to be reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
LONG, P.J., and COBB, BASCHAB, and FRY, JJ., concur.
 *Page 353