**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**August 15, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GLENN RANDALL FERGUSON,

    Defendant - Appellant.

No. 20-7045
(D.C. No. 6:17-CR-00017-RAW-1)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BACHARACH**, **MORITZ**, and **EID**, Circuit Judges.

---

Defendant-Appellant Glenn Randall Ferguson was convicted after a jury trial of possession of child pornography. On appeal, he maintains that he was not competent to stand trial. He also argues that the district court violated Federal Rule of Evidence 403 when it permitted the government to show the jury some of the images and videos of child pornography that were found on Ferguson's computer. Further, he contends that the government committed prosecutorial misconduct by failing to inform defense counsel before trial that a government expert witness had changed his opinion about whether certain images constitute child pornography. Lastly, Ferguson says that even if none of

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the aforementioned errors requires vacatur of his conviction, the cumulative impact of the errors should still result in that outcome.

We affirm the district court's decision in its entirety. We uphold the competency finding because the district court did not clearly err in finding Ferguson competent to stand trial. We affirm the district court's admission of the images and videos because the court did not abuse its discretion on this matter. We hold that any prosecutorial misconduct, assuming there was misconduct, was harmless. And finally, Ferguson's cumulative-error argument fails because Ferguson was not able to successfully identify at least two errors made by the district court below.

### I.

In January, March, and April 2014, FBI agents used a peer-to-peer program to download hundreds of images of child pornography from an IP address associated with Ferguson. Months later, law enforcement executed a search warrant for Ferguson's home, which was listed as the billing and service address for the IP address. The FBI seized three laptop computers from the home—one from the living room that Ferguson and his wife shared, one used by Ferguson's son and found in the son's bedroom, and one used by Ferguson's daughter and found in the daughter's bedroom.

During the search, Ferguson agreed to speak with FBI Special Agent Michael Rivers. According to Agent Rivers, Ferguson told him that he was "addicted to pornography" and admitted to looking at child pornography on the laptop he shared with his wife. R. Vol. II at 255. He also admitted to searching for child pornography using

Google and Bing, and to downloading the aforementioned peer-to-peer program to search for and download child pornography.

FBI forensic technicians retrieved over 1,900 images and 50 videos that Agent Rivers identified as child pornography from the computer that Ferguson shared with his wife. The FBI also marked two files of interest on the son's laptop and one file on the daughter's. Forensic examiners prepared a report that discussed all three computers, which the defense received in discovery. Based on the evidence, the government initiated this criminal proceeding against Ferguson, charging him with one count of possession of certain material involving the sexual exploitation of minors pursuant to 18 U.S.C. § 2252(a)(4)(B), (b)(2).

After he was indicted, Ferguson moved without opposition to determine whether he was competent to stand trial, and the district court granted the motion. Ferguson claimed that as a young man he was involved in two accidents that caused him to suffer traumatic brain injuries. Ferguson was evaluated at Federal Medical Center ("FMC") Fort Worth. The staff psychologist, Dr. Samuel Browning, concluded that Ferguson was competent to stand trial, but diagnosed him with "Major Depressive Disorder" and "Personality Change due to Traumatic Brain Injury." R. Vol. III at 34–35.

Unsatisfied with these conclusions, the defense retained Dr. Terese Hall to evaluate Ferguson. After approximately four hours of testing and interviews with Ferguson, Dr. Hall found that Ferguson had a "basic but generally accurate understanding of the charges against him" and was "intelligent and rational, able to comprehend and reason in the present moment." *Id.* at 48. She concluded, however, that Ferguson was

not competent to proceed because his "memory deficits render[ed] him unable to assist in his defense." *Id.*

On March 29, 2018, the district court held a competency hearing at which both Dr. Hall and Dr. Browning testified. The court found by a preponderance of the evidence that Ferguson was "not able to assist properly in his own defense," and thus remanded him to the custody of the Attorney General for treatment "to determine whether there [was] a substantial probability that in the foreseeable future he [would] attain the capacity to permit the proceedings to go forward" pursuant to 18 U.S.C. § 4241(d). R. Vol. I at 189.

Ferguson received treatment at FMC Butner from Dr. Allissa Marquez and Dr. Tracy O'Connor Pennuto. After four months of treatment, Dr. Marquez and Dr. O'Connor Pennuto ultimately concluded that Ferguson was "malingering." R. Vol. III at 112. They determined he was "feigning" or "exaggerating" his memory problems and that his memory impairment seemed "selectively focused on his legal case." *Id.* at 110, 112. Therefore, the acting warden of FMC Butner certified that Ferguson was competent to stand trial.

At the second competency hearing, Drs. Marquez and O'Connor Pennuto testified for the government, and Dr. Hall again testified for Ferguson. Dr. O'Connor Pennuto was "the only neuropsychologist" to evaluate Ferguson, and thus was the only witness who "attempted to fully assess [Ferguson's] learning and memory ability" instead of employing only brief screening measures. R. Vol. I at 232–33. Based on "the cognitive interview, the behavioral observation, as well as [other] tests," Dr. O'Connor Pennuto

4

concluded that Ferguson was malingering; she believed that "he could function at a much higher level than he was presenting." *Id.* at 212, 223. At the end of the second competency hearing, the district court found Ferguson competent to stand trial. It acknowledged that the issue was "important" and merited taking "the time to listen to four hours of testimony." *Id.* at 357. Though the court did not explicitly mention Dr. O'Connor Pennuto in its ruling, it incorporated her perspective when it found "Dr. Marquez was simply more persuasive than Dr. Hall." *Id.* at 357–58.

Eventually, Ferguson's case proceeded to trial, which included two events relevant to this appeal. First, the district court permitted the government, over Ferguson's objection, to show the jury some of the pornography found on Ferguson's laptop during the direct examination of Agent Rivers. Agent Rivers told the jury that the FBI had found more than 50 videos and 1,900 photographs on Ferguson's computer depicting "real children" under the age of eighteen "engaged in adult sexual activity." R. Vol. II at 279–80. The government then played ten of the videos that were representative of the fifty videos the government had found, all with the sound turned off. The government showed five of the clips in their entirety, each lasting approximately one minute. The other five were longer, so the government played just enough of each to permit Agent Rivers to identify them. In total, the jury was shown approximately sixteen minutes of video. The prosecution also showed the jury 15 photographs that were representative of the 1,900 images the government had found.

The second event relevant to this appeal occurred during the cross-examination of Agent Rivers, when defense counsel asked Agent Rivers about the two laptops found in

the bedrooms of Ferguson's son and daughter. Before trial, on July 19, 2019, defense counsel requested the return of those laptops, but Agent Rivers said he could not hand them over because they contained three images of child pornography or "something close enough to be." *Id.* at 304. Agent Rivers testified that he "think[s] one of the images was" child pornography, but the two images from the son's laptop he "would not say w[ere] child pornography." *Id.* at 232, 305, 350.

The government moved to introduce the images from the son's laptop (two of the three images at issue), and Ferguson moved for a mistrial. Ferguson maintained that the government had switched positions about whether the images were child pornography, and in doing so, the government had committed prosecutorial misconduct. The district court denied the motion. It reasoned that there was no "surprise" and that Ferguson could cross-examine Agent Rivers about any "conflicting thoughts [about] whether the . . . two images qualify as child pornography or not." *Id.* at 372. Explaining that the issue "will be brought out in cross examination," the court saw no "obligation to declare a mistrial." *Id.* The district court thus admitted the images into evidence.

The jury ultimately convicted Ferguson. After the guilty verdict, Ferguson moved for a new trial based on three of the grounds raised in this appeal. The district court denied the motion. This appeal followed.

## II.

Ferguson raises four arguments on appeal. First, he argues that he was denied a fair trial because his memory loss prevented him from assisting in his own defense. Second, he contends that the district court abused its discretion under Federal Rule of

Evidence 403 by permitting the government to show the jury some of the images and videos of child pornography that were found on his computer. Third, he maintains that the government's failure to inform defense counsel that its witness had changed his position as to whether two pictures constituted child pornography amounts to prosecutorial misconduct. Fourth, he says that even if each of these errors standing alone is harmless, their cumulative impact requires vacatur of his conviction. We address each of these arguments in turn.

### a.

The first issue on appeal is whether the district court erred in finding Ferguson competent to stand trial. "Competency to stand trial is a factual question." *Bryson v. Ward*, 187 F.3d 1193, 1201 (10th Cir. 1999). As with all factual questions, "[w]e review the district court's competency determination for clear error and will reverse only if we are 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. DeShazer*, 554 F.3d 1281, 1286 (10th Cir. 2009) (quoting *United States v. Mackovich*, 209 F.3d 1227, 1232 (10th Cir. 2000)). "The district court 'need not be correct,' but its finding 'must be permissible in light of the evidence.'" *Mackovich*, 209 F.3d at 1232 (quoting *United States v. Verduzco-Martinez*, 186 F.3d 1208, 1211 (10th Cir. 1999)).

"The Constitution forbids the trial of a defendant who lacks mental capacity." *DeShazer*, 554 F.3d at 1285. Here, Ferguson puts forth a substantive competency claim—*i.e.*, he claims he "was tried and convicted while, in fact, incompetent." *Grant v. Royal*, 886 F.3d 874, 892 (10th Cir. 2018) (quoting *Allen v. Mullin*, 368 F.3d 1220, 1239

7

(10th Cir. 2004)). "A petitioner alleging a substantive claim must demonstrate that he actually lacked a 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding [and] a rational as well as a factual understanding of the proceedings against him.'" *Id.* at 893 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). "A substantive competency claim . . . requires proof of incompetency by a preponderance of the evidence." *Id.* (emphasis omitted) (quoting *Allen*, 368 F.3d at 1220, 1239).

"When assessing a defendant's competence, the district court may rely on a number of factors, including medical opinion and the court's observation of the defendant's comportment." *DeShazer*, 554 F.3d at 1286 (quoting *Mackovich*, 209 F.3d at 1232). "That a defendant suffers from some degree of mental illness or disorder does not necessarily mean that he is incompetent to assist in his own defense." *Id.*

Ferguson does not contest that he is able to understand the nature and consequences of the proceedings against him. Thus, the sole question is whether Ferguson "actually lacked a 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.'" *Grant*, 886 F.3d at 893 (quoting *Dusky*, 362 U.S. at 402).

As discussed above, Dr. Marquez and Dr. O'Connor Pennuto concluded that, on several psychological tests, Ferguson was "feigning/exaggerating memory deficits." R. Vol. III at 110. They also found that the severity of his claimed memory impairment was "inconsistent with his overall level of functioning" and that "much of his memory lapses appeared selectively focused on his legal case." *Id.* at 112. At the second competency

8

hearing, after hearing testimony from Drs. Marquez, O'Connor Pennuto, and Hall, the district court found Ferguson competent to stand trial. While the court acknowledged that the competency issue merited taking "the time to listen to four hours of testimony," it found "that Dr. Marquez was simply more persuasive than Dr. Hall." *Id.* at 357–58.

This court has held on numerous occasions that "it is not clearly erroneous for a district judge to declare a defendant competent by adopting the findings of one expert and discounting the contrary findings of another." *Mackovich*, 209 F.3d at 1232; *see also DeShazer*, 554 F.3d at 1287 (upholding a competency determination where "the district court stated that it found [the] evaluation and opinion [of one of the experts] more persuasive, and expressly adopted her conclusion"); *United States v. Pompey*, 264 F.3d 1176, 1179 (10th Cir. 2001) (explaining that in assessing the defendant's competence, "[i]t was within the district court's province to assess the credibility of the witnesses, including the forensic psychologist," who testified that the defendant "was malingering and was actually competent to stand trial").

Here, the district court heard the expert testimony from both sides and was persuaded by the government's witnesses that Ferguson was fit to stand trial. We cannot conclude this decision was clearly erroneous.

Ferguson's primary contention is that his memory problems were what rendered him incompetent to stand trial. *See, e.g.*, Aplt. Br. at 13, 16 (maintaining that Ferguson was incompetent because he could not remember his conversation with Agent Rivers); *id.* at 20 (claiming that Ferguson could not assist with plea negotiations because he could not plead guilty to something of which he had no memory). However, failure to remember is

9

not "a per se deprivation of due process." *United States v. Borum*, 464 F.2d 896, 898–900 (10th Cir. 1972) (finding that a due process violation requires more than a defendant's "mental block on [relevant] events, . . . [rendering him] unable to communicate the facts from his standpoint to his counsel"). A defendant claiming memory loss must show "[p]rejudice" such as "facts available which could not be obtained from the file of the prosecution or from investigation by the defense." *Id.*

Here, Dr. Hall's testimony does not cast doubt on the conclusion that Ferguson was "capable of instructing [his lawyers] as to what submission [they were] to put forward with regard to the commission of the crime." *Id.* at 899 (quoting *Regina v. Podola*, 3 All ER 418, 433 (1959)). Additionally, "all demonstrable facts and inferences therefrom point inexorably to [Ferguson's] guilt . . . ; there is no basis for believing that [Ferguson] is in possession of facts which would be exculpatory if only he could remember them." *Id.* at 900 n.2. Thus, the district court did not commit clear error when it concluded that Ferguson's inability to recall events related to his offense did not render him incompetent to stand trial.

For the foregoing reasons, we uphold the competency finding.

**b.**

Ferguson next contends that the district court violated Rule 403 when it permitted the government to show the jury images and videos of child pornography found on his computer. However, "[w]e review evidentiary decisions for abuse of discretion" and we find that the district court did not abuse its discretion in allowing these images and videos to be shown. *United States v. Silva*, 889 F.3d 704, 709 (10th Cir. 2018).

"In particular, '[w]e will disturb a trial court's decision to admit evidence under Rule 403 only for an abuse of discretion.'" *Id.* (alteration in original) (quoting *United States v. Charley*, 189 F.3d 1251, 1260 (10th Cir. 1999)). "A district court abuses its discretion when it renders an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Id.* (quotations omitted). "A district court's decision will be reversed 'only if the court exceeded the bounds of permissible choice, given the facts and the applicable law in the case at hand.'" *Id.* (quoting *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007)).

Under Rule 403, relevant evidence "may be excluded . . . 'if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *United States v. Otuonye*, 995 F.3d 1191, 1206 (10th Cir. 2021) (quoting Fed. R. Evid. 403). "The exclusion of relevant evidence under Rule 403 is an extraordinary remedy to be used sparingly." *Id.*

Ferguson takes issue with the district court's decision to admit ten videos and fifteen images of child pornography that were found on the computer he shared with his wife. He maintains that the admission of that evidence violated Rule 403 because "the images had low probative value, and the[ir] unfair prejudice . . . to [him] outweighed that probative value." Reply Br. at 10.

In his opening brief, Ferguson seems to suggest that Rule 403 completely prohibits the admission of videos and images of child pornography found on a defendant's computer whenever uncontested testimony that the defendant's computer contained that

11

material is available as a substitute.  Our court, however, has roundly rejected such claims.  *See United States v. Schene*, 543 F.3d 627, 643 (10th Cir. 2008); *United States v. Campos*, 221 F.3d 1143, 1149 (10th Cir. 2000); *see also United States v. Cunningham*, 694 F.3d 372, 391 (3d Cir. 2012) ("[C]ourts are in near-uniform agreement that the admission of child pornography images or videos is appropriate, even where the defendant has stipulated, or offered to stipulate, that those images or videos contained child pornography.").  And in his reply brief, Ferguson acknowledges that the prosecution was not "limited to testimony."  Reply Br. at 9.

Putting aside, then, any argument that the government was categorically prohibited from admitting the evidence at issue, Ferguson's appeal with respect to this issue breaks down into two main contentions.  First, even if admission of the videos and images could have been a proper exercise of the district court's discretion, such admission was improper here because the district court failed to "explicitly consider the value of the images versus the tendency of such images to" produce unfair prejudice—that is, the district court did not actually engage in the balancing that was required of it.  *Id.* at 13.  Second, the unfair prejudice of the videos and images in fact outweighed their probative value in this specific case.

First, we begin with Ferguson's argument that the district court failed to conduct the balancing that Rule 403 requires.  Ferguson illustrates his desired outcome with a case from the Ninth Circuit—*United States v. Curtin*, 489 F.3d 935 (9th Cir. 2007) (en banc)—which reversed a district court's Rule 403 decision permitting the introduction of stories depicting explicitly sexual acts involving prepubescent girls because the district

court did not review the admitted materials before admitting them. The Ninth Circuit explained that although the materials were "generally relevant, . . . a district court making a Rule 403 decision must know precisely what is in the stories in order for its weighing discretion to be properly exercised and entitled to deference on appeal." *Id.* at 957.

Ferguson says that, like in *Curtin*, the district court here failed to ever review the materials that were presented to the jury, and as a result the district court never conducted an explicit Rule 403 weighing, violating Rule 403. *Curtin* is not binding on this court, but even if it were, Ferguson's argument would fail. He never contends that the district court in issuing its post-trial ruling failed (1) to examine the relevant materials before denying his motion for new trial or (2) to explain why the images and videos were admissible. Instead, he says that the district court's characterization of the images and videos as "short" was inaccurate. But that is an argument that goes to whether the district court properly weighed the probative value of the evidence against the risk of unfair prejudice (an argument that, for the reasons stated below, fails). It is not an argument that has any relation to the Ninth Circuit's decision in *Curtin*; *Curtin* was a case in which the district court never reviewed the relevant evidence in its entirety. *See id.* at 956–57. In short, after the trial the district court knew what evidence had been presented to the jury, and it conducted the Rule 403 balancing with that specific evidence in mind. The district court thus properly reviewed the evidence before the jury.

Ferguson's second argument—that Rule 403 prohibited the introduction of the evidence, and thus the district court erred in admitting it—fails also. We have recognized that in a case such as this where the charge is possession of child pornography, "the

images . . . [are] the gist of the government's . . . case." *Schene*, 543 F.3d at 643. "The government [is] entitled to prove its case," and thus such images (and here, videos) are generally "not unfairly prejudicial under Rule 403." *Id.*

Reinforcing the conclusion that the district court properly exercised its discretion is the fact that the government took significant measures to limit the jury's exposure to the images and videos at issue. The government introduced only fifteen images and ten videos. For the videos, it played only short excerpts, without sound. These measures significantly reduced the risk of unfair prejudice otherwise presented by the evidence.

Ferguson's argument does not overcome the substantial deference we accord to the district court's Rule 403 determination. The government needed to prove not only that the images and videos were of children, it also needed to show that Ferguson *knew* the images and videos were of children. And that issue was not open and shut. To the contrary, in his confession—which the jury heard during the trial—Ferguson questioned whether some of the girls pictured were over eighteen. All the more reason, then, that introduction of the images and videos was justified. *See id.* (permitting introduction of images of child pornography "to show intent and knowledge"); *see also United States v. Dudley*, 804 F.3d 506, 517 (1st Cir. 2015).

We affirm the district court's admission of the images and videos, holding the court did not abuse its discretion on this matter.

**c.**

Third, Ferguson argues that we should reverse his conviction because the prosecution committed misconduct by not informing Ferguson when Agent Rivers

14

changed his mind regarding whether the two pictures found on Ferguson's son's computer constituted child pornography.  We disagree.[1]

"Prosecutorial misconduct violates a defendant's due process rights if it infects a trial with unfairness and denies the defendant the right to a fair trial."  *United States v. Currie*, 911 F.3d 1047, 1055 (10th Cir. 2018).  "Generally, there are two ways in which prosecutorial misconduct . . . can result in constitutional error."  *Underwood v. Royal*, 894 F.3d 1154, 1167 (10th Cir. 2018) (omission in original) (quoting *Littlejohn v. Trammell*, 704 F.3d 817, 837 (10th Cir. 2013)).  "First, it can prejudice a specific right as to amount to a denial of that right."  *Littlejohn*, 704 F.3d at 837 (quotations omitted).  Second, "a prosecutor's misconduct may in some instances render a habeas petitioner's trial so fundamentally unfair as to deny him due process."  *Id.* (quotations omitted).

"The misconduct analysis proceeds in two steps."  *Currie*, 911 F.3d at 1055.  "We must first examine whether the prosecutor's conduct was in fact improper."  *United States v. Pulido-Jacobo*, 377 F.3d 1124, 1134 (10th Cir. 2004).  If it was, we "then determine whether . . . [the error was] . . . harmless beyond a reasonable doubt."  *Id.* (alteration and omissions in original) (quoting *United States v. Martinez-Nava*, 838 F.2d 411, 416 (10th Cir. 1988)).  "To determine whether prosecutorial misconduct is harmless, 'we must look to the curative acts of the district court, the extent of the misconduct, and

---

[1] The government and Ferguson disagree as to which standard of review we apply to this issue.  Ferguson argues we apply de novo review to allegations of prosecutorial misconduct.  The government argues we review allegations of prosecutorial misconduct for abuse of discretion where there was a contemporaneous motion for a new trial.  We do not decide here which standard applies because the result is the same under either one.

the role of the misconduct within the case as a whole.'" *Id.* (quoting *Martinez-Nava*, 838 F.2d at 416). "In order to view any prosecutorial misconduct in context, 'we look first at the strength of the evidence against the defendant and decide whether the prosecutor's [conduct] plausibly could have tipped the scales in favor of the prosecution. . . . Ultimately, we must consider the probable effect the prosecutor's [conduct] would have on the jury's ability to judge the evidence fairly.'" *Duckett v. Mullin*, 306 F.3d 982, 988–89 (10th Cir. 2002) (omission in original) (quoting *Fero v. Kerby*, 39 F.3d 1462, 1474 (10th Cir. 1994)).

Ferguson maintains that the district court should have ordered a mistrial or a new trial because Agent Rivers changed his opinion about whether images found on Ferguson's son's computer constituted child pornography, and this change of opinion was not revealed until the middle of trial. Because Agent Rivers was a government witness and not a prosecutor, it is unclear that a prosecutorial misconduct claim can be brought on the basis of Agent Rivers's conduct alone. In his reply brief, however, Ferguson clarifies his position: He says that the government attorneys knew before trial that Agent Rivers had changed his opinion about the images found on the computer that belonged to Ferguson's son. Reply Br. at 15–16. And he maintains that the prosecutors' failure to inform the defense attorneys of this change violated Federal Rule of Criminal Procedure 16, which provides that (1) "[a]t the defendant's request, the government must give to the defendant a written summary of any [expert] testimony that the government intends to use . . . during its case-in-chief at trial," Fed. R. Crim. P. 16(a)(1)(G), and (2) "[a] party who discovers additional evidence or material before or during trial must promptly

16

disclose its existence to the other party or the court if . . . the evidence or material is subject to discovery or inspection under this rule[] and the other party previously requested . . . its production," *id.* 16(c).  This violation of Rule 16, in Ferguson's view, was an act of prosecutorial misconduct.

In denying Ferguson's motion for a new trial, the district court agreed with Ferguson that the government engaged in misconduct by violating Rule 16, but ultimately denied Ferguson's motion on the grounds that the misconduct was harmless.

Our decision in *United States v. Bishop*, 469 F.3d 896 (10th Cir. 2006), *overruled in part on other grounds by Gall v. United States*, 552 U.S. 38 (2007), is instructive. There, the defendant complained that the government's failure to promptly disclose an email to the defense (1) was a violation of Rule 16 that should have led to exclusion of the evidence and (2), in turn, was prosecutorial misconduct that should have resulted in a mistrial.  *Id.* at 904.  Assuming without deciding that the government violated Rule 16, *see id.* at 905, we rejected the prosecutorial misconduct argument because we "[did] not believe any misconduct that occurred was egregious or extensive, or played a significant role in the case." *Id.* at 906.  The same logic applies here.  This single instance of delayed disclosure was certainly not "extensive."  Nor was it "egregious."  Clearly, Agent Rivers went back and forth as to how to classify the material at issue.  That he changed his view about these two images a second time and that the government neglected to tell the defense was not egregious, given the insignificance of the two images compared to the 1,900 images and 50 videos that the government found on Ferguson's computer.

17

Ultimately, "'[w]e need not decide whether [the allegations] represent prosecutorial misconduct, [when] we are satisfied that' any error was harmless," *Pulido-Jacobo*, 377 F.3d at 1134 (third alteration in original), which is the case here. Ferguson's theory of harm is that "the government created the possible defense that the 18-year-old son in the household was the person responsible for the child pornography on the computer when Agent Rivers said in July 2019 that there was child porn found on the son's computer," Reply Br. at 14, and due process is violated when "the prosecution proves guilt by creating and then destroying its own creations," Aplt. Br. at 37 (quoting *United States v. Gomez-Gallardo*, 915 F.2d 553, 556 (9th Cir. 1990)). But the Ninth Circuit case that Ferguson relies on for this argument is one where the defendant "chose to provide no defense theory or witnesses," and "the government . . . created a defense theory and alibi for him to prove his guilt by refuting it." *Gomez-Gallardo,* 915 F.2d at 556. This case is completely different. Here, Ferguson himself created and chose to pursue the theory that the presence of child pornography on the other computers called into doubt that Ferguson was responsible for the child pornography found on the laptop in the living room. Agent Rivers's opinion may have inspired the theory, but Ferguson did not have to employ it, and there is no indication that the government itself would have presented the theory as a strawman to be knocked down. Indeed, Agent Rivers's changed opinion did not actually deprive Ferguson of his defense theory. It certainly weakened Ferguson's case. But Ferguson had the opportunity to cross-examine Agent Rivers about his changed testimony. Two of the relevant photos were admitted into evidence, so Ferguson had ample opportunity to try to persuade the jury that the images before them

18

constituted child pornography.  Ferguson, therefore, cannot be said to have been harmed by Agent Rivers's changed view.

Assuming without deciding that there was a Rule 16(c) violation, we hold any error was harmless and reject Ferguson's prosecutorial misconduct claim.

**d.**

Lastly, Ferguson argues that even if all three of the claims discussed above fail individually, his conviction should still be reversed due to the demonstrated cumulative effect of the errors committed by the district court.  We reject this argument.

The cumulative-error doctrine "recognizes that '[t]he cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error.'"  *United States v. Perrault*, 995 F.3d 748, 779 (10th Cir. 2021) (quoting *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990) (en banc)).  "To assess that possibility, we 'aggregate[] all errors found to be harmless and analyze[] whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'"  *Id.* (alterations in original) (quoting *Grant*, 886 F.3d at 954).

Ferguson's cumulative-error argument fails.  Unless a defendant is able to "identif[y] at least two harmless errors, we will decline to undertake a cumulative-error analysis."  *Id.*; *see also Ellis v. Raemisch*, 872 F.3d 1064, 1090 (10th Cir. 2017) ("[T]here must be more than one error to conduct cumulative-error analysis.").  For the reasons set forth above, Ferguson has not shown at least two errors, and we reject his cumulative-error claim.

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court.


Entered for the Court


Allison H. Eid
Circuit Judge