FILED
United States Court of Appeals
Tenth Circuit

February 6, 2009

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

TIMOTHY DESHAZER,

        Defendant - Appellant.

No. 07-8023

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D. Ct. No. 00-CR-25-WFD)**

---

Trace L. Rabern, Santa Fe, New Mexico, appearing for Appellant.

David A. Kubichek, Assistant United States Attorney (Kelly H. Rankin United States Attorney), Office of the United States Attorney for the District of Wyoming, appearing for Appellee.

---

Before **TACHA**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **McCONNELL**, Circuit Judge.

---

**TACHA**, Circuit Judge.

---

        Defendant-Appellant Timothy DeShazer appeals his conviction for

interstate stalking, *see* 18 U.S.C. § 2261A, and carrying a firearm during a crime

of violence. *See* 18 U.S.C. § 924(c)(1)(A)(ii). Through counsel, he argues that he was not competent to stand trial, that he should not have been permitted to represent himself at trial, and that his pre-trial detention without mental-health treatment violated his due process rights. We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM.

### I. BACKGROUND

A.    Underlying Offense and State Court Proceedings

During the spring of 1998, the victim in this case contacted Mr. DeShazer after her recent divorce. The two, who were former childhood friends, began to interact via telephone and e-mail. Their relationship progressed, and in July 1998 Mr. DeShazer, who was living in Wisconsin, spent a month at her home in Wyoming.

The victim then learned that her sister was ill and began to fly frequently to Las Vegas to visit her. At this point, she told Mr. DeShazer that the relationship would not work. Mr. DeShazer continued, however, to contact her by telephone and e-mail, despite her pleas that he stop. In December 1998, he hand delivered a note and left it in her mailbox. The note included this passage: "Sorry I missed you. I hope to hear from you by January 10. Otherwise, perhaps you will see me when I return."

After the note, some time passed without incident. On January 5, 2000, however, Mr. DeShazer loaded his vehicle with various guns, duct tape, and other

supplies and set out to the victim's home. As he attempted to burst through her front door, she heard him and retrieved a gun she had obtained for this very situation. During the ensuing confrontation, a neighbor knocked on the door, and the victim was able to escape and call the police. Mr. DeShazer was arrested about an hour later near Gillette, Wyoming. In the car, the police found, among other inculpatory items, a digital recording on which Mr. DeShazer said he intended to seek retribution from the victim for destroying his life.

Mr. DeShazer was charged in Wyoming state court with attempted kidnapping, aggravated assault and battery, and aggravated burglary. Shortly thereafter, he was indicted in federal district court on one count of interstate stalking, in violation of 18 U.S.C. § 2261A, and one count of using or carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

The federal charges were deferred pending resolution of the state charges. Mr. DeShazer was found guilty on the state charges, but while awaiting sentencing he was diagnosed with delusional and depressive disorders. The Wyoming State Hospital informed the state trial court that his delusional disorder was "well controlled by his current medication," but that he had been legally incompetent during the trial. Mr. DeShazer was then taken into federal custody for further evaluation that could be used in the state sentencing proceedings.

B.    Federal Proceedings

Doctors evaluated Mr. DeShazer at the Federal Medical Center in Rochester, Minnesota. In December 2001, a report submitted to the district court stated that Mr. DeShazer "does not presently suffer from a mental disease or defect rendering him unable to understand the nature and consequences of the proceedings against him, or to assist properly in his defense." Mr. DeShazer was subsequently returned to state custody for sentencing. Upon completion of the state proceedings, Mr. DeShazer was returned to federal custody in July 2002 to face the federal charges against him.

1.    *First Competency Hearing*

After postponing arraignment to allow defense counsel to obtain an independent mental evaluation, the district court held a competency hearing on February 24, 2003. Upon hearing testimony from defense and government experts, the district court found Mr. DeShazer competent to stand trial. Specifically, the government expert's opinion persuaded the court. It corresponded to the opinion set forth in the December 2001 report, that Mr. DeShazer had an obsessive compulsive disorder and not a mental illness. The court also told defense counsel to inform Mr. DeShazer that it would not allow him to "play games with the court."

At the arraignment, trial was set for July 2, 2003. In May 2003, however, defense counsel filed a motion to dismiss based on double jeopardy. The trial was delayed for resolution of this motion and an interlocutory appeal to this

court.  The appeal was mooted, however, when the Wyoming Supreme Court reversed Mr. DeShazer's state-court convictions on competency grounds that August.

2.    *Second Competency Hearing*

Trial was rescheduled for February 17, 2004.  On motions by both the government and counsel for Mr. DeShazer, however, the district court scheduled another competency hearing for the morning of trial.  At that hearing, the district court expressed concerns with the possible staleness of the 2001 report by the Federal Medical Center and ordered that Mr. DeShazer be evaluated again by a facility within the Bureau of Prisons.  The district court scheduled a third competency hearing for August 25, 2004.

3.    *Third Competency Hearing*

On August 17, counsel for Mr. DeShazer moved to continue the third competency hearing and requested independent competency evaluations.  After a hearing, the district court granted the defense's requests.  While those evaluations were underway, and before a new date had been set for a competency hearing, the district court set a preliminary trial date of January 4, 2005, and an alternate date of April 18, 2005.

A few weeks before the January 4, 2005 trial date, counsel for Mr. DeShazer filed a motion asking the court to continue the trial, schedule a new competency hearing, and dismiss the charges pursuant to *Jackson v. Indiana*, 406

U.S. 715 (1972). The district court denied the motion to dismiss the charges pursuant to *Jackson* (Mr. DeShazer immediately appealed), but it granted the motion to continue the trial so that the court could yet again evaluate Mr. DeShazer's mental competency. The district court again indicated its suspicion that Mr. DeShazer was manipulating the system.

In May 2005, Mr. DeShazer refused to be medicated any further and filed a motion to stay forced medication. The district court granted the motion despite its concern that Mr. DeShazer was malingering. In August 2005, Dr. Cristina Pietz, a federal examiner, determined that Mr. DeShazer suffered from no mental illness or defect. Rather, he had obsessive impulses that interfered with daily functioning.

In July 2006, we dismissed Mr. DeShazer's interlocutory appeal based on *Jackson* for lack of appellate jurisdiction. *See United States v. DeShazer*, 451 F.3d 1221, 1222 (10th Cir. 2006). The district court then denied another motion by defense counsel for hospitalization and further evaluation since one had been conducted in August 2005 by Dr. Pietz. Mr. DeShazer also had his counsel file a motion stating his desire to represent himself under *Faretta v. California*, 422 U.S. 806 (1975).

In August 2006, the court held a third competency hearing. At that hearing, there was no real dispute that Mr. DeShazer rationally understood, *inter alia*, the nature of the proceedings against him, the strength of the government's evidence,

-6-

and the potential availability of an insanity defense. Accordingly, the central question was whether Mr. DeShazer suffered from a mental disease that rendered him unable to assist in his defense. *See* 18 U.S.C. § 4241(a). Mr. DeShazer's expert, Dr. Bruce Kahn, who had examined Mr. DeShazer many times previously, testified that Mr. DeShazer was delusional and that this mental disease interfered with his ability to work with counsel. Dr. Kahn's testimony can be summarized as follows: Mr. DeShazer had been, and is at the present time, delusionally obsessed with the victim in that he believes she deliberately used him for the purpose of ruining his life. Because of these delusions, Mr. DeShazer is furious with the victim, and his sole intent is to avenge himself by making the "truth" about the victim be known. He thinks only the victim can deliver that truth by testifying at trial that he is a nice person and that she intentionally used him and tried to hurt him. This mindset is also the motivation for Mr. DeShazer's request to represent himself at trial. His counsel does not support that trial strategy, and Mr. Deshazer feels only he can effectively cross-examine the victim.

In contrast, Dr. Pietz testified that Mr. DeShazer was not delusional; that his interest in the victim and his desire to put her on the stand to expose the truth was indicative of an obsessive-compulsive personality disorder, rather than a mental illness; and that he could assist in his own defense if he chose to do so. The district court ultimately found Dr. Pietz's testimony more persuasive and thus found Mr. DeShazer competent to stand trial.

4.     Faretta *Hearing*

Having determined that Mr. DeShazer was competent to stand trial, the court held two hearings in September 2006 concerning his request to represent himself pursuant to *Faretta*. The court repeatedly and vehemently urged Mr. DeShazer that he should proceed with counsel. The court added that due to the overwhelming evidence against him, the only plausible defense was likely insanity, and that he needed counsel's assistance to present that defense. The court additionally questioned the wisdom of Mr. DeShazer's professed trial strategy. The court warned him that he would likely anger the jury and suggested that even if the victim testified in the way that he hoped, such testimony would not acquit him. Despite the district court's repeated admonitions, Mr. DeShazer unequivocally affirmed his desire to represent himself. After determining he knowingly and voluntarily waived his right to counsel, the court granted the motion to proceed pro se and appointed his counsel as standby counsel. The matter went to trial in November 2006, and the jury returned guilty verdicts on both counts. The court sentenced Mr. DeShazer to 480 months' imprisonment.

On appeal,[1] counsel for Mr. DeShazer argues that (1) the district court

---

[1]On July 11, 2008, Mr. DeShazer submitted a pro se letter to this court expressing his desire to withdraw his appeal. After ordering briefing on the issue from the government and counsel for Mr. DeShazer, we remanded to the district court for the limited purpose of determining whether Mr. DeShazer was competent to withdraw his appeal in that the decision was made knowingly and voluntarily. The district court found that Mr. DeShazer was not competent to

(continued...)

erroneously found him competent to stand trial; (2) he was not competent to

waive his right to an attorney and represent himself; and (3) he was denied

treatment during the pendency of his case, which he contends violates the

principles set forth in *Jackson*.

## II.  DISCUSSION

A.      Competency Determination

The Constitution forbids the trial of a defendant who lacks mental

competency.  *See Indiana v. Edwards*, — U.S. —, 128 S. Ct. 2379, 2383 (2008).

The test for competency to stand trial asks whether a defendant "has sufficient

present ability to consult with his lawyer with a reasonable degree of rational

understanding—and whether he has a rational as well as factual understanding of

the proceedings against him."  *United States v. Mackovich*, 209 F.3d 1227, 1232

(10th Cir. 2000) (quotations omitted); *see also Drope v. Missouri*, 420 U.S. 162,

171 (1975) ("It has long been accepted that a person whose mental condition is

---

[1](...continued)
make that decision, and, in any event, that he no longer wished to withdraw his
appeal.  Although Mr. DeShzaer has since submitted additional pro se motions
suggesting he again would like to withdraw his appeal, we proceed with our
disposition of this case.  Neither the government nor counsel for Mr. DeShazer
challenge the district court's determination that Mr. DeShazer is not competent to
withdraw his appeal, and regardless, it is within our discretion whether to accede
to a litigant's request to terminate his appeal.  *See* Fed. R. App. P. 42(b) ("An
appeal *may* be dismissed on the appellant's motion on terms agreed to by the
parties or fixed by the court.") (emphasis added); *see also United States v.
Cusumano*, 83 F.3d 1247, 1251 n.4 (10th Cir. 1996) (denying the appellant's
motion to withdraw his appeal).

such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.").

We review the district court's competency determination for clear error and will reverse only if we are "left with the definite and firm conviction that a mistake has been committed." *Mackovich*, 209 F.3d at 1232 (quotations omitted). "When assessing a defendant's competence, the district court may rely on a number of factors, including medical opinion and the court's observation of the defendant's comportment." *Id.* (quotation omitted). That a defendant suffers from some degree of mental illness or disorder does not necessarily mean that he is incompetent to assist in his own defense. *Id.* at 1233.

Mr. DeShazer contends that the district court erred in finding him competent to stand trial for three reasons: (1) the finding was based on the court's unsupported view that he was malingering; (2) the finding was based on an erroneous legal opinion by Dr. Pietz; and (3) the court did not give sufficient weight to the requirement that a defendant have the ability to cooperate with his attorney and assist in his defense.

First, the district court's competency order does not indicate that its determination was based, even in part, on its view that Mr. DeShazer was purposefully manipulating the court system in an attempt to further delay a trial—an opinion that was not shared by any of the experts involved or even the

government.  While the district court judge certainly voiced his suspicions throughout the proceedings, he repeatedly stated that despite his personal views, the court's determination must be based on evidence provided by appropriate professionals.[2]

Indeed, the court focused on the testimony presented by each side's respective experts.  During the August 2006 competency hearing, both Dr. Kahn and Dr. Pietz testified that Mr. DeShazer could understand the nature and consequences of the proceedings against him.  The principal disagreement was over whether he was able to assist in his defense.  Dr. Kahn opined that Mr. DeShazer suffered from a delusional disorder that compromised his ability to assist counsel at trial.  Dr. Pietz concluded that Mr. DeShazer did not suffer from a mental illness but rather from a personality disorder, and that despite this disorder, Mr. DeShazer had the capacity to assist in his own defense if he chose to do so.  The district court stated that it found Dr. Pietz's evaluation and opinion

[2]For example, just before the court granted Mr. DeShazer's motion to stay forced medication, the judge stated:

> I maintain the position I have maintained on this case from the beginning, and that is that Mr. DeShazer is one of the most adept manipulators of the criminal justice system that I've encountered.  I remain convinced of that fact, and I want this record to reflect—and I hope it has in the previous occasion reflected so that there's no doubt at the Court of Appeals that I think this is one giant scam on the United States.  I believe Mr. DeShazer was competent from the git-go and that he is competent now and that he should stand trial for the charges for which he is indicted.  But I recognize that I cannot stand on my own assessment and that it has to be based on an evaluation of clinicians.

more persuasive, and expressly adopted her conclusion.  Specifically, the court

found that Mr. DeShazer had "a rational and factual understanding of the nature

and consequences of the proceedings against him, and that he is capable of

cooperating and assisting in his defense."  In short, the record belies Mr.

DeShazer's assertion that the court relied on its suspicion that he was

manipulating the system to support its competency determination.

Mr. DeShazer also argues that the competency determination is clearly

erroneous because it was, he contends, based on Dr. Pietz's legally erroneous

view that a "personality disorder" is not a "mental illness" under 18 U.S.C.

§ 4241.[3]  The court, however, did not rely on Dr. Pietz's legal conclusion.  Dr.

Pietz testified that a "personality disorder," or Axis II illness, is not a mental

illness for purposes of § 4241, which she said was clear in both the relevant

literature and under *Kansas v. Hendricks*, 521 U.S. 346 (1997).  The government

---

[3]18 U.S.C. § 4241 reads in relevant part:

(a) Motion to determine competency of defendant.—At any time after
the commencement of a prosecution for an offense and prior to the
sentencing of the defendant, or at any time after the commencement
of probation or supervised release and prior to the completion of the
sentence, the defendant or the attorney for the Government may file a
motion for a hearing to determine the mental competency of the
defendant.  The court shall grant the motion, or shall order such a
hearing on its own motion, if there is reasonable cause to believe that
the defendant may presently be suffering from a mental disease or
defect rendering him mentally incompetent to the extent that he is
unable to understand the nature and consequences of the proceedings
against him or to assist properly in his defense.

agrees that *Hendricks* does not stand for such a proposition—namely, that a "mental illness" must be diagnosable as an Axis I illness for purposes of § 4241. Indeed, *Hendricks* did not even discuss § 4241. Instead, it held that a mental problem does not necessarily have to be diagnosable as a "mental illness" in order to allow a state to involuntarily institutionalize a person. *Id.* at 359. The case is inapposite, as it did not even address competency to stand trial.

In its competency order, the court did not reference Dr. Pietz's erroneous legal conclusion or *Hendricks*. Dr. Pietz also testified that the defendant could rationally assist in his defense and cooperate with his lawyer—which are the relevant considerations for a competency determination. Whether or not Mr. DeShazer could be diagnosed with an Axis I or Axis II illness is irrelevant, and there is no indication the district court relied on such a diagnosis.

Finally, Mr. DeShazer contends that the district court "gave little or no weight" to the requirement that an accused be rationally and intelligently able to assist his counsel. To the contrary, the district court identified this requirement as the only genuine issue concerning his competency to stand trial. The district court simply chose to credit the testimony of Dr. Pietz on this point, as it was entitled to do. *See Mackovich*, 209 F.3d at 1232 ("[I]t is not clearly erroneous for a district court to declare a defendant competent by adopting the findings of one expert and discounting the contrary findings of another.").

B.     Waiver of Right to Counsel

A defendant has a Sixth Amendment right to self-representation. *See Faretta v. California*, 422 U.S. 806, 819, 821 (1975). Because the right to counsel is also guaranteed by the Sixth Amendment, however, a defendant may waive the right to counsel and proceed at trial pro se "only if the waiver is knowing, intelligent, and voluntary." *Maynard v. Boone*, 468 F.3d 665, 676 (10th Cir. 2006). The validity of such a waiver thus contains two distinct inquiries. *Id.* The court must first ensure that the defendant is competent to waive counsel. *Id.* It must then determine that the waiver is knowing and voluntary. *Id.*

The second prong of this analysis—whether the waiver is knowing and voluntary—hinges on the defendant's understanding of the significance and consequences of his decision, as well as whether the decision was coerced. *Id.* at 677. Thus, we have said that "[i]t is ideal when the trial judge conducts a thorough and comprehensive formal inquiry including topics such as the nature of the charges, the range of punishment, possible defenses, and a disclosure of risks involved in representing oneself pro se." *United States v. Turner*, 287 F.3d 980, 983 (10th Cir. 2002) (quotations omitted). In this case, there is no serious dispute that the district court's repeated warnings and instructions were sufficient to inform Mr. DeShazer of the dangers and disadvantages of proceeding pro se. Nor does Mr. DeShazer maintain that his decision was made involuntarily.

Mr. DeShazer instead contends that he was not competent to waive his right to counsel. In contrast to the knowing-and-voluntary analysis, we have held that

-14-

the competency analysis focuses on the defendant's ability to understand the proceedings, and that the standard is the same as the standard used to determine whether the defendant is competent to stand trial. *See Maynard*, 468 F.3d at 676–77. In his appellate brief, Mr. DeShazer argues for "a change in the law, at least in cases where the only viable defense is an insanity defense, to require that an accused must show something more than bare minimal competency to stand trial to act as his own attorney in such a case." In supplemental briefing, he also directs our attention to *Edwards*, which was decided shortly after oral argument in this case, and which he contends has altered the relevant legal framework.

Neither Mr. DeShazer nor his counsel raised this "heightened-standard" argument below or otherwise objected when the district court conducted the *Faretta* proceedings without considering Mr. DeShazer's competency in these terms. We therefore limit our review to plain error. *See United States v. Muñoz-Nava*, 524 F.3d 1137, 1147 (10th Cir. 2008). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotations omitted).

The Supreme Court first addressed the issue of competency to waive counsel and to proceed pro se in *Godinez v. Moran*, 509 U.S. 389 (1993). In that case, the defendant pleaded guilty to three counts of first-degree murder in Nevada state court. *Id.* at 391. After he was deemed competent to stand trial, the

-15-

defendant sought to discharge his attorneys and enter guilty pleas. *Id.* at 392. The trial court found that the defendant waived counsel knowingly and intelligently, and that he pleaded guilty freely and voluntarily. *Id.* at 393. The court sentenced him to death on all three counts, and two were affirmed on appeal. *Id.* In federal habeas proceedings, however, the Ninth Circuit concluded that competency to waive constitutional rights requires a higher level of mental functioning than that required to stand trial. *Id.* at 394. The Supreme Court disagreed, rejecting "the notion that competence to plead guilty or to waive the right to counsel must be measured by a standard that is higher than (or even different from)" the trial competency standard. *Id.* at 398.

Following *Godinez*, we have made clear that the level of competency required to waive the right to counsel is the same as the level of competency to stand trial. *See Maynard v. Boone*, 468 F.3d at 676; *United States v. Boigegrain*, 155 F.3d 1181, 1186 (10th Cir. 1998) ("[T]he degree of competence necessary to waive the right to counsel is identical to the degree of competence necessary to stand trial."). Indeed, Mr. DeShazer concedes in his brief that *Faretta*, *Godinez*, and our precedent "compelled" the district court to find him competent to waive his right to counsel once it determined he was competent to stand trial.

In *Edwards*, however, the Supreme Court clarified the precise parameters of its decision in *Godinez*. In that case, an Indiana trial court found the defendant competent to stand trial but not competent to represent himself at trial. *Edwards*,

-16-

128 S. Ct. at 2382–83. The defendant proceeded with the assistance of counsel, and the jury convicted him. *Id.* at 2383. The Indiana Supreme Court reversed the convictions, reasoning that *Godinez* required the state trial court to allow the defendant to represent himself. *Id.* Indiana petitioned for a writ of certiorari, which the Supreme Court granted to address "whether the Constitution permits a State to limit [a] defendant's self-representation right by insisting upon representation at trial—on the ground that the defendant lacks the mental capacity to conduct his trial defense unless represented." *Id.* at 2385–86. The Court determined that states have that right. *Id.* at 2387–88.

The Court first explained that *Godinez* addressed only the level of competency required to waive the right to counsel when the defendant intends to enter a guilty plea and, accordingly, that a different standard may be used when the defendant asserts his right to self-representation to defend himself at trial. *Id.* at 2385. The Court also emphasized that *Godinez* involved a state trial court that had permitted the defendant to represent himself, whereas *Edwards* involved a state trial court that had denied the defendant that right. *Id.* Thus, the Court reiterated that under *Godinez*, it is constitutional for a state to allow a defendant to conduct trial proceedings on his own behalf when he has been found competent to stand trial. *Id.* On the other hand, the state may insist on counsel and deny the right of self-representation for defendants who are "competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are

-17-

not competent to conduct trial proceedings by themselves." *Id.* at 2388.

*Edwards*, then, does not speak to the level of competency required to waive the right to counsel and invoke the right to represent oneself at trial when (in Mr. DeShazer's words) "the only viable defense is an insanity defense." Nothing in *Edwards* suggests that the applicability of a particular defense is relevant to whether a defendant is competent to waive counsel and represent himself.

In his supplemental brief, Mr. DeShazer correctly notes that after *Edwards* a state may deny a criminal defendant the right to represent himself when he suffers from a severe mental illness. But that situation is simply not present here: the district court acceded to Mr. DeShazer's unopposed request to invoke that right. To the extent that Mr. DeShazer suggests that the district court was duty-bound to deny him the right, we do not read *Edwards* as announcing such a new rule. By its terms, the *Edwards* Court held only that "the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Edwards*, 128 S. Ct. at 2388. Thus, while the district court was not compelled to find Mr. DeShazer competent to waive his right to counsel simply because the court had found him competent to stand trial, it does not follow that the district court was absolutely prohibited from doing so. To the contrary, *Edwards* itself reaffirmed that a court may constitutionally permit a defendant to represent himself so long

-18-

as he is competent to stand trial. *Id.* at 2385. We are aware of no case that reads *Edwards* differently. Accordingly, the district court did not err, let alone plainly err, in finding Mr. DeShazer competent to waive his right to counsel and represent himself at trial. *See United States v. Taylor*, 514 F.3d 1092, 1100 (10th Cir. 2008) (explaining that error is plain when it is contrary to well-settled law).

C.     Lack of Adequate Treatment Claim

Finally, Mr. DeShazer argues that a lack of adequate medical treatment throughout the pendency of the pre-trial proceedings violated his due process rights as articulated in *Jackson*. He makes clear that this claim is distinct from his previous motion to dismiss under *Jackson*, which argued that the trial delay prejudiced his ability to present an adequate defense, and which we dismissed for lack of jurisdiction because it was in essence a speedy-trial claim. *See DeShazer*, 451 F.3d at 1222. He now contends that *Jackson* mandates a "promise of treatment" and that his "long years barren of treatment" while his trial was pending violated this principle. Because Mr. DeShazer raises this argument for the first time on appeal, we again review for plain error. *See Muñoz-Nava*, 524 F.3d at 1147.

Mr. DeShazer does not point out where *Jackson* provides that such a "promise of treatment" is constitutionally required. Indeed, he does not even state what remedy he is seeking. *Jackson* held that due process prevents the government from indefinitely confining an incompetent defendant without further

-19-

proceedings directed at treatment or to restore competency. *See Jackson*, 406 U.S. at 720, 738. Here, unlike in *Jackson*, Mr. DeShazer was competent, and the district court was eager to proceed to trial and dispense with the matter. Simply put, the fact that the court did not sua sponte order mental health treatment while Mr. DeShazer was in custody was not error.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Mr. DeShazer's conviction.