**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 28, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CARLOS ROBERTO LOPEZ-
HODGSON,

      Defendant-Appellant.

No. 08-2106
(D.C. No. 2:06-CR-00260-LH-1)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **HOLLOWAY**, and **BRISCOE**, Circuit Judges.

## I. INTRODUCTION

After being found competent to stand trial, Carlos Roberto Lopez-Hodgson

pled guilty to reentry of a deported alien after a conviction for an aggravated felony,

in violation of 18 U.S.C. § 1326. He argues on appeal that the competency

determination, and therefore his conviction, must be reversed. Specifically, he

maintains that the district judge (1) erroneously admitted expert testimony at the

competency hearing, and (2) clearly erred in finding him competent. We have

_____

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

jurisdiction under 28 U.S.C. § 1291,[1] and we affirm.

## II. BACKGROUND

The district judge appointed Dr. Samuel Roll, a forensic psychologist, to examine Mr. Lopez-Hodgson. Dr. Roll explained in a psychological report that Mr. Lopez-Hodgson understood the nature of the accusations against him and the possible penalties. R., Vol. I, Doc. 41, at 1 (Psychological Report by Samuel Roll, Ph.D., P.A.). He also understood that he had his own attorney, that the prosecutor would try to demonstrate his guilt, and that an impartial judge would be involved in the proceedings. *Id.* at 1–2. Dr. Roll opined that with certain significant limitations, Mr. Lopez-Hodgson was capable of informing his attorney about pertinent facts. *Id.* at 2.

However, Dr. Roll concluded that Mr. Lopez-Hodgson was unable to meaningfully assist in his own defense. *Id.* He explained that Mr. Lopez-Hodgson suffered from mild mental retardation, and had impairments in his ability to think logically. *Id.* He further opined that Mr. Lopez-Hodgson suffered from "a blending of schizophrenic thought disorder with paranoid aspects." *Id.* at 3.

Mr. Lopez-Hodgson was later confined at the United States Medical Center for Federal Prisoners. While at that facility, Dr. Richard Frederick, a forensic psychologist, evaluated Mr. Lopez-Hodgson. Dr. Frederick prepared a written report

---

[1]The Government's Motion to Dismiss for Lack of Jurisdiction (Mootness) is denied.

and testified at the competency hearing.

Dr. Frederick observed and communicated with Mr. Lopez-Hodgson, discussed his situation with other staff members, and enrolled him in a psycho-educational group. R., Vol. III, at 11 (Competency Hearing Transcript). Dr. Frederick also called Mr. Lopez-Hodgson's attorney and considered IQ scores from Dr. Roll's report. *Id.* at 11, 37, 41

Dr. Frederick administered a test, the Validity Indicator Profile, and Mr. Lopez-Hodgson's performance was consistent with below average IQ–better than mental retardation. *Id.* at 14–15. However, Dr. Frederick did not administer a standardized IQ test on Mr. Lopez-Hodgson. *Id.* at 15. He did not think such a test would be useful because Mr. Lopez-Hodgson's behavior did not correlate with somebody who might have mental retardation. *Id.* at 16. Therefore, in his opinion, psychological testing was not the most useful way to evaluate Mr. Lopez-Hodgson's cognitive capacities. *Id.*

Dr. Frederick explained that, while at the facility, Mr. Lopez-Hodgson went into great detail as to what he thought the sentencing Guidelines might be for him if he were to plead guilty or be found guilty. *Id.* at 24–25. When Dr. Frederick spoke to Mr. Lopez-Hodgson's attorney about the incident, the attorney said that Mr. Lopez-Hodgson had memorized the information. *Id.* at 25.

In addition, Dr. Frederick testified that Mr. Lopez-Hodgson had been placed in a locked unit after disobeying a prison officer, but the officer did not give Mr.

Lopez-Hodgson an incident report within 24 hours. *Id.* at 26. For the incident report to be sustained, the officer was required to give Mr. Lopez-Hodgson an incident report within 24 hours. *Id.* Mr. Lopez-Hodgson asked to be let out of the locked unit because the incident report had not been delivered within 24 hours. *Id.* When questioned by Dr. Frederick, Mr. Lopez-Hodgson said that he read about the policy in the inmate handbook when he arrived at the prison. *Id.* at 26–27. He had arrived two months earlier. *Id.* at 27.

Dr. Frederick further testified that when he would not grant Mr. Lopez-Hodgson's request to move to a different unit at the facility, Mr. Lopez-Hodgson approached the administrative staff and asked to go to a different unit. *Id.* at 28.

Dr. Frederick testified that the manner in which he evaluated Mr. Lopez-Hodgson–the tests he chose to administer and observation–was the standard way to evaluate a patient in a psychiatric hospital. *Id.* at 19–20. Dr. Frederick testified that he did not think Mr. Lopez-Hodgson had any mental illness, and he was "very confident" that Mr. Lopez-Hodgson was competent to stand trial. *Id.* at 30–31.

At the competency hearing, Mr. Lopez-Hodgson objected to Dr. Frederick's testimony, arguing that his opinion was based solely on observation. *Id.* at 35. Mr. Lopez-Hodgson argued that objective tests and scientific methodology accepted by the scientific community must underlie the opinion. *Id.* at 35–36. The district judge overruled the objection and admitted Dr. Frederick's testimony, explaining, *id.* at 36:

I hold that the court's obligation is as a gatekeeper, and I find that the

doctor has described facts and data, and the facts and data that are used by this witness are traditionally used by other witnesses of the same type and [in] similar circumstances. He has, to my opinion, applied the principles and methods reliably to the facts from the case.

Mr. Lopez-Hodgson also provided the report and testimony of Dr. Susan Cave, a clinical psychologist. Dr. Cave found Mr. Lopez-Hodgson's IQ to be in the mental retardation range. R., Vol. I, Doc. 46, at 5 (Forensic Evaluation Report by Susan B. Cave, Ph.D.). She explained that she gave Mr. Lopez-Hodgson an IQ test, and he scored in the first percentile for intelligence. R., Vol. III, at 47 (Competency Hearing Transcript). In other words, ninety-nine percent of the people in his age group had a higher level of cognitive functioning. *Id.*

Dr. Cave further indicated that Mr. Lopez-Hodgson knew what the charges were, knew he could plead guilty or not guilty, knew that a sentence would be served in prison, and knew that he would be released if found not guilty. *Id.* at 50–51. He defined "not guilty" as not having done anything wrong. *Id.* at 51. He also understood the role of his defense attorney and the role of the prosecutor, knew that the judge's job was to sentence him, and knew that the witnesses were there to prove he did something wrong. *Id.* at 52. Dr. Cave also explained that Mr. Lopez-Hodgson would be able to recall and discuss what happened in his case, but would have trouble responding to rapid questioning. R., Vol. I, Doc. 46, at 7 (Forensic Evaluation Report by Susan B. Cave, Ph.D.). However, Mr. Lopez-Hodgson could not remember if he had entered a plea. R., Vol. III, at 53 (Competency Hearing

Transcript).

Dr. Cave explained that her greatest concern about Mr. Lopez-Hodgson's competency was his comprehension of what was being said while he was in court because of his weak vocabulary. *Id.* at 60. She was also concerned that he would just go along with whatever he was told to do, and that he would make decisions without fully understanding the implications for the future. *Id.* She asserted that she had seen retarded people that she thought were competent, but Mr. Lopez-Hodgson was not one of those people. *Id.* at 61. Dr. Cave further testified that observation alone is not an accepted scientific method of evaluation. *Id.* at 59.

Following the testimony at the competency hearing, the district judge explained, *id.* at 71–72:

> I listened to Dr. Frederick carefully, and it is my experience in listening to and hearing the testimony of psychiatrists and psychologists who work at the medical center for federal prisoners, and the method that they use to evaluate and make determinations about competency, that this doctor did what they all do. He examined the individual by communicating, and if necessary, if tests were valuable, they would do that.
> In this case, according to Dr. Frederick, those kind of tests that were run by Dr. Cave were purposeless for this individual. And to observe how someone operates or conducts himself in the circumstances of the mental hospital is a traditional method of their evaluation. I've seen many reports and heard countless testimony about that method of evaluation, so to hear somebody come in here and say that's not an accepted way to do it is just flat unbelievable.
> So I was very impressed with the testimony of Dr. Frederick, and it was done in accordance with the methods used in these matters in prison settings, and I conclude that the defendant is competent to stand trial. That doesn't mean that he has the understanding that a lawyer might have of the facts and the issues, but that's not required, and I'm

going to accept the testimony and evaluation by Dr. Frederick and find that the defendant is competent.

The district judge then prepared an "Order of Competency." Mr. Lopez-Hodgson entered into a plea agreement under Federal Rule of Criminal Procedure 11(a)(2) in which he "reserve[d] the right to appeal the . . . Order of Competency." He then pled guilty to reentry of a deported alien after a conviction for an aggravated felony, in violation of 18 U.S.C. § 1326, and received a sentence of time served and two years of unsupervised release.

## III.  DISCUSSION

Mr. Lopez-Hodgson maintains (1) that the testimony of Dr. Frederick was erroneously admitted, and (2) that the competency finding is clearly erroneous.

### A.  Admission of Dr. Frederick's Testimony

Mr. Lopez-Hodgson argues that the district judge erroneously admitted Dr. Frederick's testimony. First, he argues that the district judge abandoned his gatekeeping function by failing to make reliability findings concerning the testimony. Second, he argues that Dr. Frederick's method of determining competence was unreliable.

In response, the Government asserts that Mr. Lopez-Hodgson waived the right to appeal the admission of Dr. Frederick's testimony in his written plea agreement. We conclude that he reserved his objection that Dr. Frederick's testimony was unreliable. However, we further conclude that the testimony was properly admitted.

## 1. Reservation of the Issues

A defendant is normally precluded from appealing his conviction after pleading guilty. *United States v. Anderson*, 374 F.3d 955, 957 (10th Cir. 2004). However, with the consent of the judge and the government, a defendant may enter a conditional guilty plea "reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion." Fed. R. Crim. P. 11(a)(2).

We apply a three-pronged analysis to determine whether we may consider an appellant's argument after the appellant enters into a conditional plea agreement that waives his right to appeal a conviction. *Anderson*, 374 F.3d at 957. We must determine: (1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his or her appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice. *Id.* Only the first prong is reasonably in question here.[2]

When considering whether an appeal falls within the scope of a waiver of appellate rights, the general rule is that appellate rights are waived unless reserved

[2]Mr. Lopez-Hodgson has failed to argue that he did not knowingly and voluntarily waive his appellate rights or that enforcing the waiver would be unjust, other than indirectly by arguing that the competency determination is clearly erroneous. As explained below, the competency determination is not clearly erroneous. Therefore, we conclude that the latter two prongs of the three-prong test do not preclude enforcement of the waiver. *See Anderson*, 374 F.3d at 958–59 (holding that the appellant holds the burden of demonstrating the absence of a knowing and voluntary plea or a miscarriage of justice, and finding a knowing and voluntary wavier when the appellant failed to raise the proposition on appeal).

in the plea agreement. *United States v. Ochoa-Colchado*, 521 F.3d 1292, 1299 (10th Cir. 2008). "'In determining a waiver's scope, we will strictly construe appeal waivers and any ambiguities in these agreements will be read against the Government and in favor of a defendant's appellate rights.'" *Anderson*, 374 F.3d at 957. In so doing, the text of the plea agreement is our guide. *Id.*

Further, a reservation of the right to appeal a pretrial ruling by the district judge extends only to theories raised in the challenged ruling. *Ochoa-Colchado*, 521 F.3d at 1299; *see also Anderson*, 374 F.3d at 956–58 (holding suppression theory waived when the appellant did not seek suppression on that theory before the district judge, even though the appellant reserved the right to appeal the order denying his motion to suppress).

In his plea agreement Mr. Lopez-Hodgson "reserve[d] the right to appeal the . . . Order of Competency." Necessarily implied in that reservation are theories raised before the district judge that demonstrate that the competency determination is erroneous. *See Ochoa-Colchado*, 521 F.3d at 1299 (holding that a reservation of the right to appeal a specific pretrial ruling by the district judge extends only to theories raised in the challenged ruling). Mr. Lopez-Hodgson failed to object to the absence of any reliability findings regarding Dr. Frederick's testimony. Therefore, he is precluded from raising this argument on appeal.

However, the exclusion of Dr. Frederick's testimony may have altered the district judge's competency determination, and Mr. Lopez-Hodgson objected to that

testimony because of its supposed unreliability. Therefore, he may raise the argument that Dr. Frederick's testimony was inadmissable due to its unreliability.

## 2. Reliability of Dr. Frederick's Testimony

The district judge's application of the legal standard in deciding whether to admit or exclude an expert's testimony is reviewed for abuse of discretion. *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006). This broad discretion applies in making the reliability determination. *Id.* We reverse only if the district judge's conclusion is arbitrary, capricious, whimsical or manifestly unreasonable, or when we are convinced the district judge made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. *Id.*

Under Federal Rule of Evidence 702, a district judge must satisfy himself or herself that the proposed expert testimony is both reliable and relevant before permitting a jury to assess the testimony. *Id.* Reliability questions may concern the expert's data, method, or his application of the method to the data. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

In reviewing whether an expert's testimony is reliable, the trial judge must assess the reasoning and methodology underlying the expert's opinion. *Rodriguez-Felix*, 450 F.3d at 1123. The testimony must be based on scientific knowledge, which implies a grounding in the methods of science based on actual knowledge, rather than subjective belief or unsupported speculation. *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004). An inference or assertion must

be derived by the scientific method and must be supported by appropriate validation–i.e., good grounds, based on what is known. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003).

While expert opinions must be based on facts which enable the expert to express a reasonably accurate conclusion as opposed to conjecture or speculation, absolute certainty is not required. *Id.* Further, it need not be proven that the expert is undisputably correct or that the expert's theory is generally accepted in the scientific community. *Id.* Rather, it must be shown that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements. *Id.*

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court provided four nonexclusive factors that a trial judge may consider in making its reliability assessment: (1) whether the theory at issue can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and whether there are standards controlling the methodology's operation; and (4) whether the theory has been accepted in the relevant scientific community. *Rodriguez-Felix*, 450 F.3d at 1123 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593–94 (1993)). The *Daubert* factors' relevance in assessing reliability depends on the nature of the issue, the expert's particular expertise, and the subject of the expert's testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). District judges have broad discretion to

consider a variety of other factors. *Dodge*, 328 F.3d at 1222. For example, expert testimony can rely on experience. *Nacchio*, 555 F.3d at 1258.

Here, the district judge did not abuse his discretion in finding that Dr. Frederick's testimony was reliable. To form his competency opinion, Dr. Frederick spoke with and observed Mr. Lopez-Hodgson, discussed Mr. Lopez-Hodgson with other staff members, and enrolled him in a psycho-educational group. In addition, he called Mr. Lopez-Hodgson's attorney, considered IQ scores from Dr. Roll's report, and conducted his own psychological testing. The record also makes clear that he relied on his extensive experience in performing competency evaluations.

While Dr. Cave testified that observation alone is not an accepted scientific method of evaluation, Dr. Frederick did not rely merely on observation to evaluate Mr. Lopez-Hodgson's competence. Moreover, Dr. Frederick testified that the manner in which he evaluated Mr. Lopez-Hodgson–the tests he chose to administer and observation–was the standard way to evaluate a patient in a psychiatric hospital. *See Rodriguez-Felix*, 450 F.3d at 1123 (citing *Daubert*, 509 U.S. at 593–94) (explaining that whether the theory has been accepted in the relevant scientific community is a factor in determining reliability). The district judge's determination that Dr. Frederick's testimony was reliable was not an abuse of discretion. *See also Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1235 (10th Cir. 2004) (holding that using experience and observation to deduce an explosion's cause was a generally acceptable method of investigating fires, and although not susceptible to testing or

peer review, it was not an abuse of discretion to find the testimony to be reliable).

## B.  The Competency Determination

Mr. Lopez-Hodgson argues that the determination that he was competent to stand trial is clearly erroneous.  We disagree.

The Constitution forbids the trial of a defendant who lacks mental competency. *United States v. deShazar*, 554 F.3d 1281, 1285 (10th Cir. 2009).  The standard for assessing competency is that the defendant must have "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding [and have] a rational as well as factual understanding of the proceedings against him.'" *United States v. Herrera*, 481 F.3d 1266, 1272 (10th Cir. 2007) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

Competency to stand trial is a factual determination that can be set aside only if it is clearly erroneous.  *United States v. Pompey*, 264 F.3d 1176, 1178 (10th Cir. 2001).  A finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.  *Id.*

When determining a defendant's competency, the district judge may rely on a number of factors, including medical opinion, the judge's observations of the defendant, and an attorney's representation about his client's competency.  *Id.* at 1179; *see United States v. Cornejo-Sandoval*, _ F.3d _, _ (10th Cir. 2009).  In addition, that a defendant suffers from a mental illness or disorder does not

-13-

necessarily mean that he is incompetent. *deShazar*, 554 F.3d at 1286. Moreover, that a defendant can recite the charges against him or her, list witnesses, and use legal terminology are insufficient to demonstrate that the defendant is competent. *McGregor v. Gibson*, 248 F.3d 946, 952 (10th Cir. 2001).

Here, the district judge did not clearly err when he determined Mr. Lopez-Hodgson to be competent. Dr. Frederick, a forensic psychologist, testified that he was "very confident" that Mr. Lopez-Hodgson was competent to stand trial. Mr. Lopez-Hodgson's actions described by Dr. Frederick indicate competence. While at the hospital, Mr. Lopez-Hodgson memorized parts of the sentencing Guidelines. In addition, he objected when a prison officer violated a prison policy that he had read about two months earlier.

While both Dr. Roll and Dr. Cave expressed concerns about Mr. Lopez-Hodgson's competence, the district judge was entitled to instead credit Dr. Frederick's opinion. *See United States v. Mackovich*, 209 F.3d 1227, 1232 (10th Cir. 2000) ("[I]t is not clearly erroneous for a district judge to declare a defendant competent by adopting the findings of one expert and discounting the contrary findings of another."). Dr. Roll and Dr. Cave provided, at best, questionable support for their conclusion that Mr. Lopez-Hodgson was incompetent.

Both Dr. Cave and Dr. Roll indicated that Mr. Lopez-Hodgson had a strong understanding of his predicament. For example, Dr. Cave explained that he understood the charges and the possible outcomes. He also understood the role of

his defense attorney and the role of the prosecutor, knew that the judge's job was to sentence him, and knew that the witnesses were there to prove he did something wrong. And Dr. Roll opined that with certain significant limitations, Mr. Lopez-Hodgson was capable of informing his attorney about pertinent facts.

While Dr. Roll opined that Mr. Lopez-Hodgson suffered from "a blending of schizophrenic thought disorder with paranoid aspects," that fact alone does not render Mr. Lopez-Hodgson incompetent. *See deShazar*, 554 F.3d at 1286 (observing that a defendant's suffering from a mental illness or disorder does not necessarily mean that the defendant is incompetent).

Finally, Dr. Cave testified she was concerned about Mr. Lopez-Hodgson's weak vocabulary, that he would do whatever he was told, and that he would make decisions without fully understanding the implications for the future. These concerns, while legitimate, likely exist with regard to a great many criminal defendants, most of which are not legally incompetent. The competency finding is not clearly erroneous.

## IV. CONCLUSION

We conclude that it was not an abuse of discretion to determine Dr. Frederick's testimony to be reliable. Moreover, the finding of competency is not

clearly erroneous.  Accordingly, we **AFFIRM**.

Entered for the Court,


William J. Holloway, Jr.
Circuit Judge