**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 21, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

STEPHEN PLATO MCRAE,

Defendant - Appellant.

No. 18-4000
(D.C. No. 2:16-CR-00566-TS-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **SEYMOUR**, and **KELLY**, Circuit Judges.
_____

Defendant-Appellant Stephen Plato McRae appeals from the district court's

determination that he was not competent to stand trial. Our jurisdiction arises under 28

U.S.C. § 1291 and we affirm.

**Background**

A federal grand jury indicted Mr. McRae in February 2017, charging him with

destruction of an energy facility, possession of a firearm by a restricted person, and

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

possession of marijuana.  1 R. 23.  On April 6, 2017, Mr. McRae's defense counsel moved for a competency hearing pursuant to 18 U.S.C. § 4241, which authorizes the court to order a psychiatric or psychological examination of the defendant to determine whether the defendant is fit to stand trial.  Id. at 48; 18 U.S.C. § 4241(a)–(b).  Mr. McRae argued, through counsel, that "he may be presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or cannot properly assist counsel in his defense."  1 R. 48–49.

Specifically, the motion alerted the court that Mr. McCrae suffers from both physical and mental maladies, including bipolar disorder, and that his maladies cause him to "obsessively worr[y] . . . to the point of being unable to discuss any other matters."  Id. at 49.  The motion informed the court that "[h]is attitude and demeanor change frequently," that "[h]e has had increased difficulty maintaining his train of thought as he speaks to defense counsel," and that "his thoughts have become more and more scattered."  Id.  It further elaborated on Mr. McRae's inability to focus and his frequent tendency to lose his train of thought, which have resulted in "more and more times when he has lost track of the discussion and the procedures of his case."  Id. at 49–50.  The motion included a comment made to defense counsel: "I wish you would come to talk to me when I am sane."  Id. at 50.  Mr. McRae's defense counsel explained that he "has had increased difficulty communicating basic legal principles to Mr. McRae and being able to have him focus on decisions related to upcoming hearings."  Id.

The district court continued the trial indefinitely, id. at 51, granted the motion for a competency determination, and ordered Mr. McRae to undergo a psychiatric or psychological evaluation. Id. at 53. Mr. McRae was committed to the Federal Detention Center in Englewood, Colorado, id. at 59, where he was evaluated by Dr. Jessica Micono, Psy.D., a forensic psychologist. 2 R. 5. In the course of her evaluation, Dr. Micono conducted clinical interviews, observed Mr. McRae's behavior at the facility, administered several psychological tests, and monitored his non-privileged correspondence. Id. at 6–7. She also gathered supplemental information through legal documents, investigative reports, and collateral contacts with the defense and prosecution attorneys, and she reviewed investigative materials provided to her by the government. Id. at 7.

Dr. Micono's report concluded that Mr. McRae was fit to stand trial. Id. at 5. Mr. McRae reported being diagnosed with bipolar disorder and ADHD in 2004, and that he experienced "cognitive decline, primarily difficulties with memory, attention, and concentration, that have become progressively worse over the past five to ten years." Id. at 10–11. Nevertheless, Dr. Micono concluded that Mr. McRae was "consistently alert and oriented to person, place, time, and situation," and that "[h]is thought process was organized and coherent." Id. at 11.

Dr. Micono used a number of psychological tests to evaluate Mr. McRae's intellectual functioning. Id. at 12–15. One such test, the Wechsler Abbreviated Scale of Intelligence, Second Edition (WASI-II), assessed Mr. McRae's thinking and reasoning skills. Id. at 12. Mr. McRae's performance led Dr. Micono to conclude that his verbal

3

IQ was average and that his non-verbal IQ was superior. Id. She noted, however, that his "overly abstract responses" likely skewed his verbal IQ score. Id. at 13. As an example, she reported that when asked to define "decade," Mr. McRae responded, "A unit of time in human existence. An anthropocentric unit of time." Id. When prompted to provide more information, he stated:

> It's so narrow, it's a narrow description of time it's within a linear section of time which is so anthropocentric. It's amazingly anthropocentric, the way humans perceive time. I have to say this is a little entertaining to get to give my perception of the universe, but it's an honest perception. You know I'm giving my honest perception, right?

Id. Dr. Micono surmised that "these types of responses" made it likely that his verbal IQ score underestimated his verbal abilities. Id.

Dr. Micono ultimately reported that "Mr. McRae's diagnostic picture is complicated." Id. at 18. She noted that he "did not put forth adequate sustained effort" during certain tests. Id. She suggested possible reasons: he was either unmotivated, attempting to depict his memory as more impaired than it was, trying to increase his likelihood of treatment, or attempting to influence his legal case in some way. Id. She also noted that his behavior "was not consistent with an individual experiencing the memory dysfunction he reported," and that "[t]here was no evidence to suggest he was experiencing significant cognitive, memory, or mood symptoms that would result in a formal diagnosis." Id. She ultimately diagnosed him with "Other Specified Personality Disorder, with Narcissistic and Paranoid Features." Id. at 19.

With respect to his competency to stand trial, Dr. Micono concluded that Mr. McRae "demonstrated an adequate understanding of the nature and consequences of the

4

court proceedings against him, and an adequate ability to cooperate and assist counsel in his defense." Id. at 21. She reported that Mr. McRae stated that his defense counsel "lies" and is, "[a]t best, . . . a cheerleader for the prosecution" who is "trying to push [him] into a plea bargain." Id. She also noted that, although Mr. McRae recognized the expectation for him to act "[m]easured, credible, calm, collected, forthright, unguarded and determined" in the courtroom, he felt unable to do so because of his "scattered, erratic, and agitated" state. Id. That said, she still concluded that "[t]here was no evidence to suggest Mr. McRae is suffering from a psychotic disorder," and that he "demonstrated sufficient present ability to consult with his attorney with a reasonable degree of rational understanding." Id. at 22.

Approximately four months after Dr. Micono issued her report, at defense counsel's request, Dr. David L. Moulton, M.D., evaluated Mr. McRae for his fitness to stand trial. Id. at 23. Dr. Moulton reviewed Mr. McRae's investigation files and Dr. Micono's report. Id. He also interviewed Mr. McRae at the Iron County Jail on September 23 and October 20, 2017, for 1.75 and 1.25 hours, respectively. Id. In an eight-page report, Dr. Moulton concluded that, although Mr. McRae was likely able to comprehend and appreciate the charges against him, he was unable to assist counsel in his defense. Id. at 27. In particular, Dr. Moulton noted that Mr. McRae presented "psychotic symptoms" during his interviews, including "thought disorganization, and preoccupying persecutory delusions." Id. In Dr. Moulton's opinion, Mr. McRae's symptoms were such that "Mr. McRae cannot discuss the pertinent facts of the case without severe emotional dysregulation and becoming tangent about often unrelated

5

government conspiracies." Id. He reported that Mr. McRae's "most likely diagnosis" was bipolar 1 disorder, although it is possible Mr. McRae had schizoaffective disorder. Id.

Dr. Moulton also responded to Dr. Micono's report. Id. at 29. He pointed to evidence in her report of Mr. McRae's psychiatric dysfunction, and that such symptoms "may likely be more severe than when she assessed him." Id. Such increased severity, he hypothesized, may have resulted from the intervening four-month period in which Mr. McRae received no psychiatric treatment. Id. He also criticized Dr. Micono's conclusion that Mr. McRae's symptoms did not corroborate evidence of severe dysfunction. Id. Specifically, he pointed to Mr. McRae's definition of the word "decade," which "was similar to the types of meaningless responses" he received from Mr. McRae "when trying to obtain basic answers to pertinent questions." Id. He also noted that Dr. Micono "did not provide adequate support to justify [her] diagnosis, nor did she account for [Mr. McRae's] symptoms of bipolar disorder." Id.

On November 6, 2017, the district court held a competency hearing. 3 R. 1. At the outset, it noted that it was "a little bit unusual in that we have two competing evaluations with different conclusions." Id. at 3. The court briefly described Dr. Micono's and Dr. Moulton's reports before hearing from counsel. Defense counsel stated that although Mr. McRae's mental conditions did not affect his understanding of the nature of the charges against him, it was defense counsel's view that Mr. McRae was unable to assist properly in his defense. Id. at 5. The government did not dispute Dr.

Moulton's report, and it stated that it would concede to the court's ruling should it find that Mr. McRae indeed could not properly assist in his defense. Id. at 6–7.

The district court stated that it found both Dr. Micono's and Dr. Moulton's evaluations to be credible. Id. at 7. It then stated that, "based upon Dr. Moulton's most recent evaluation . . . there are serious questions as to whether or not Mr. McRae would be able to adequately and properly assist" in his defense. Id. at 7–8. Because both defense counsel and the government agreed that "further treatment might be helpful," the court held that Mr. McRae was not competent to stand trial. Id. at 8. It thus committed Mr. McRae to custody "for such reasonable time to determine if there is a substantial probability that in the foreseeable future he will obtain the capacity to permit the proceedings to go forward." Id.

On November 7, 2017, the district court issued its written order finding Mr. McRae incompetent to stand trial and committing him for up to four months of hospitalization and treatment. 1 R. 73. Mr. McRae timely appealed the district court's competency determination.[1]

**Discussion**

We review for clear error a district court's competency determination, and we will not disturb such determination unless "we are 'left with the definite and firm conviction

---

[1] The government contested the timeliness of Mr. McRae's appeal, and it moved to dismiss for lack of jurisdiction under Fed. R. App. P. 4(b)(1)(A)(i). The motion is denied as moot because the government now concedes the appeal is timely.

7

that a mistake has been committed.'" United States v. DeSahzer, 554 F.3d 1281, 1286 (10th Cir. 2009) (quoting United States v. Mackovich, 209 F.3d 1227, 1232 (10th Cir. 2000)). Our review relies heavily on the district court's discretion in reaching its determination. United States v. Pompey, 264 F.3d 1176, 1179 (10th Cir. 2001).

On appeal, Mr. McRae contends that the district court clearly erred because its findings that Dr. Micono's report was credible and that Mr. McRae was unfit to stand for trial were "internally inconsistent." Aplt. Br. at 22. He notes that Dr. Micono was well-qualified, and that her report, which was based on an in-depth evaluation, fully accounted for his "unusual" or "difficult" characteristics. Id. at 23. In contrast, he argues that Dr. Moulton's report came to a different conclusion based on the "same body of evidence," and that the court was not justified in its adoption of his report merely because it was more recent. Id. at 26. He offers the reports' disparate analyses of Mr. McRae's definition of the word "decade" as illustrative of the "flawed nature" of the district court's determination; Dr. Micono interpreted his answer as "overly abstract" and "elaborate" but not indicative of his incompetence, while Dr. Moulton interpreted the same answer as "meaningless" and evidence of "disorganized thought patterns." Id. at 24–25. He also focuses on the reports' differing conclusions about the degree of Mr. McRae's distrust of defense counsel, noting that Dr. Moulton characterized Mr. McRae's views of defense counsel as evidence of "pre-occupying persecutory delusions," while Dr. Micono opined that such views did not render him incompetent. Id. at 25–26. Because, he argues, the reports were irreconcilable, the district court erred by adopting Dr. Moulton's findings while simultaneously crediting Dr. Micono's report. Id. at 26.

8

Mr. McRae's argument is unavailing. Dr. Micono and Dr. Moulton did not examine the "same body of evidence." Not only had four months elapsed between the reports of Dr. Micono and Dr. Moulton, but Dr. Moulton twice interviewed Mr. McRae. As the government persuasively argues, Dr. Moulton's conclusions, including those that departed from Dr. Micono's report, can plausibly be explained by the deterioration of Mr. McRae's condition over the intervening four months. Aplee. Br. at 22. For example, Dr. Moulton documented Mr. McRae's scattered thoughts and emotional dysregulation during his interviews, noting that such symptoms were more pronounced during his second interview. 2 R. 26. Dr. Moulton thus offered support for his diverging interpretation of Mr. McRae's seemingly benign responses to Dr. Micono. The same is true of Dr. Moulton's conclusion that Mr. McRae's worsening condition had negatively affected his ability to engage in his own legal defense and had exacerbated his distrust of defense counsel. Dr. Moulton's report recounts Mr. McRae's "fantasy courtroom-drama vision of how he would like to proceed," and his belief that he could persuade the jury to disregard judicial instructions. Id. at 28. It also documents Mr. McRae's conspiratorial beliefs about how defense counsel was working for the prosecution. Id.

By accepting Dr. Moulton's report after crediting that of Dr. Micono, the district court was persuaded that the likely worsening of Mr. McRae's condition cast Mr.

9

McRae's earlier responses in a different light.[2]  We see no reason to disturb such

finding.[3]

       AFFIRMED.

                         Entered for the Court

                         Paul J. Kelly, Jr.
                         Circuit Judge

---

[2]  However, even if we were to accept Mr. McRae's characterization of the district court's findings (which we do not), the district court would not have clearly erred by ultimately crediting one of the two reports and not the other.  See United States v. Pikyavit, 527 F.3d 1126, 1130 (10th Cir. 2008) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (quoting Anderson v. Bessemer City, 470 U.S. 564, 574 (1985))).

[3]  Mr. McRae also argues that the district court should not have relied on defense counsel's representations regarding Mr. McRae's competency, and that this court should not consider such representations to have waived Mr. McRae's challenge to the district court's competency determination.  Aplt. Br. at 18.  We need not address this argument, however, because the two reports alone provide an adequate basis to support the district court's findings.